(No. 41838.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM WERHOLLICK, Appellant.

*Opinion filed May 27, 1970.*

WARD, J., took no part.

SAM ADAM and EDWARD M. GENSON, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JOSEPH ROMANO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

A jury in the circuit court of Cook County found William Werhollick guilty of the sale and the unlawful possession of a narcotic drug. He was sentenced to the penitentiary for a term of 10 years to 10 years and 1 day on the sale count and for a term of 5 to 10 years on the possession count, the sentences to run concurrently. The appellate court affirmed the judgment (*People v. Werhollick,* 101 Ill. App. 2d 353), and we granted defendant's petition for leave to appeal.

The evidence supporting the conviction is set out in the appellate court opinion and need not be repeated. The only question with which we are concerned is whether the trial court erred in holding that the informer-witness could invoke the attorney-client privilege and thereby prevent his former counsel from testifying as to a possible promise of leniency by the People to the informer in return for his incriminating testimony against the defendant.

The basis of the conviction was a controlled purchase of narcotic drugs from defendant by Joseph Bodnar, a

police informer. Bodnar admitted that he was a former user of narcotics. He also admitted that on May 6, 1966, he was arrested by detective Reynolds, one of the officers who observed the controlled purchase. Three separate burglary indictments were returned against him and his bail was set at $50,000. He remained in jail until August 8, 1966, when he was released on his own recognizance. While he was out of jail, he would see detective Reynolds several times a week, and about one month after his release he assisted the police in the controlled purchase. He also admitted that he was involved in 16 other burglaries for which no indictments had yet been returned against him.

Defendant's attorney attempted to impeach Bodnar's credibility by showing that he was a former narcotic user and that his co-operation in the controlled purchase and subsequent testimony was the result of the People's promises of reward and immunity in cases which were pending against him. Bodnar, however, specifically denied that he had received promises of leniency or immunity in return for his assistance in convicting defendant.

In a further attempt to impeach Bodnar, defendant called Thomas P. Cawley, the attorney who represented Bodnar at the preliminary hearings on the three burglary indictments. The People immediately objected to any questions concerning Cawley's representation of Bodnar and the court conducted a hearing out of the presence of the jury. Defendant's counsel told the judge he wanted Cawley to testify concerning the circumstances under which Bodnar was released from jail on August 8, 1966. The judge stated: "Anything that he did pertaining to Bodnar is a privileged communication." Bodnar was then brought to the judge's chambers and he claimed his privilege as to any confidential communications he had made to Cawley. The trial resumed and Cawley testified that he had several conversations with Bodnar and with the State's Attorney on or about August 8, 1966, the day Bodnar was released from jail. Cawley

then invoked the attorney-client privilege and refused to answer any questions about his conversations with Bodnar.

While the reasoning of the appellate court is not entirely clear on this issue, it apparently agreed with the trial court that any conversation between an attorney and his client is a privileged communication. We do not agree.

Matters which the client intends his attorney to disclose to a third person (who is not the agent of either the client or the attorney) are not privileged. (*Dickerson* v. *Dickerson,* 322 Ill. 492; *Spencer* v. *Burns,* 413 Ill. 240.) Thus, any offer or acceptance of an offer made by Bodnar through his attorney to the State's Attorney to become a prosecution witness in return for a promise of leniency or immunity is not privileged. Furthermore, any communication by Bodnar to his attorney in the presence of the State's Attorney or any other third person (who is not the agent of Bodnar or his attorney) would not be privileged nor would any communication by Bodnar to the State's Attorney or a third person in the presence of Cawley be privileged. See 8 Wigmore on Evidence § 2311 (McNaughton rev. 1961).

If there was an agreement between Bodnar and the prosecution, it is possible, of course, that Cawley might have learned of it through a confidential communication from Bodnar. However, it appears that if there was an agreement and the conversations Cawley had with his client and the State's Attorney on or about August 8, 1966, dealt with such an agreement, the communications between Bodnar and Cawley would not be privileged.

If there is unprivileged evidence of an agreement between Bodnar and the prosecution, defendant would be entitled to a new trial. (See *People* v. *Lueck,* 24 Ill.2d 554; *Napue* v. *People,* 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173.) The judgment of the Appellate Court, First District, is reversed and the cause is remanded to the circuit court of Cook County for a hearing to determine if there is evidence that promises of leniency or immunity were made to induce

Bodnar to testify. If there is such evidence, the trial court will vacate the judgment of conviction and grant the defendant a new trial. If there is no evidence of promises of leniency or immunity, the judgment will stand. See *People v. Johnson,* 38 Ill.2d 399; *People v. McGuire,* 35 Ill.2d 219; *People v. Stark,* 33 Ill.2d 616.

*Reversed and remanded, with directions.*

Mr. Justice Ward took no part in the consideration or decision of this case.