THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHIE D. ROGERS, Defendant-Appellant.

Third District    No. 75-55

Opinion filed October 19, 1976.

500

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (James E. Hinterlong and John X. Breslin, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial the defendant, Richie Rogers, was found guilty by the circuit court of Rock Island County of aggravated battery and sentenced to a term of from 3 years 4 months to 10 years to the department of corrections.

Both defendant and his wife, Eleanor Rogers, were jointly indicted for aggravated battery in that they struck Shawn Tyrone Lee with a deadly weapon (a wooden board) and caused great bodily harm. Upon motion of Richie Rogers the cases were severed and Richie is the only defendant in this case. Shawn is the son of Eleanor and the stepson of the defendant. The child's injuries resulted from numerous beatings with the wooden board at various times between 3 p.m. on June 16, 1974, and 9:30 a.m. the next morning when police arrived in response to a call from neighbors. Upon the arrival of the police officers, Mrs. Rogers approached them outside the home and requested that they stop her husband from beating Shawn. As the officers went up the stairs to the apartment they heard a slapping sound and a child crying. The officers were admitted to the apartment by the defendant. After examining the child and finding multiple bruises on his buttocks and legs and that the skin on his buttocks was broken, the police arrested the defendant Richie Rogers. Mrs. Rogers was not arrested ·and posted bond when the grand jury returned an indictment against her on July 2, 1974, for her participation in the beatings

of Shawn. The charges against Eleanor Rogers were dropped shortly after defendant was sentenced.

The State's chief witness as to the events that occurred on July 16 and 17 was the defendant's wife Eleanor. During her testimony, she admitted to pulling Shawn's pants down and striking his bare bottom with the wooden board that is admitted as People's exhibit number one in the present case. However, she testified that Shawn's skin was unbroken when she finished striking him. In his testimony, the defendant denied ever striking the child with the board but admitted to striking the child with a switch.

Defendant contends that various objects admitted into evidence lacked proper foundation, had no probative value, and could only serve to prejudice the defendant. People's exhibit number two was a pair of bloodstained shorts that were identified by Mrs. Rogers as "a pair of Shawn's shorts." No other foundation testimony was introduced concerning this piece of evidence. The shorts were allegedly the ones removed by the personnel of the hospital where Shawn was taken by police to be treated for his injuries. Yet, no evidence was introduced to establish that these shorts were the ones taken from Shawn at the hospital or to establish any part of the subsequent chain of custody. The shorts were examined by an expert to determine if the stains were of the same blood type as Shawn's, but the expert's testimony failed to state the results of his examination. The State's expert did testify that Shawn's blood type was type O, the same blood type as found on the wooden board.

Two other articles of evidence were identified by Mrs. Rogers as "Shawn's undershirt" and "I think it was a sheet laying on the couch." Although Mrs. Rogers testified that she gave the shirt and sheet to Detective Easton at her apartment, subsequent testimony failed to establish any further connection between the incident and the items. The sheet and the undershirt were also analyzed to determine if the stains were the same blood type as Shawn's, but the State's expert failed to state the results of his analysis of these objects. No testimony was introduced as to when the blood got on any of these three exhibits.

■■ Defendant's assertion that these objects had no probative value and were highly prejudicial cannot be sustained. The shorts, undershirt and sheet were of probative value in two regards. First, they demonstrated the nature and extent of the injury, issues raised by the indictment's charge of great bodily harm and use of a deadly weapon. Second, the presence of blood on each item was competent to establish the defendant's knowledge and awareness of the injury. As to the prejudicial character of the items, we agree with defendant that the

objects had an inflammatory character, but a party cannot have evidence excluded merely because it might arouse feelings of indignation in the jury. (*People v. Jenko*, 410 Ill. 478, 102 N.E.2d 783.) But the fact that the objects were probative does not completely resolve the question, since a proper foundation must be established to admit physical evidence. Physical evidence must be connected with both the crime and the defendant to be admissible in a criminal trial. (*People v. Jones*, 22 Ill. 2d 592, 177 N.E.2d 112.) Since the sparse foundation evidence which was introduced was inadequate to establish these exhibits' connection to the crime or to the defendant, the trial court erred when it improperly admitted these objects into evidence. However, if it were only a question of the improper admission of these exhibits into evidence we would entertain serious doubts of whether reversible error existed. But certain comments in the prosecutor's opening statement and final argument magnified the error by stressing these exhibits.

Portions of the prosecutor's opening statement and closing argument were based upon testimony that was not introduced into evidence and which emphasized the exhibits previously referred to. During his opening statement, the prosecutor informed the jury that the evidence would show that a nurse in the emergency room to which Shawn was taken removed his undershorts and handed them over to Lt. Gary Hird and that Hird would testify as to the receipt of the clothing. Lt. Hird failed to testify at the trial and the nurse's testimony failed to contain any statement as to the items of clothing taken from Shawn. The prosecutor also argued that he would present the testimony of a chemist to the effect that he had analyzed the shorts, other clothing and a sheet and found them to contain human bloodstains of the same blood type as Shawn's. While the chemist did testify as to the tests performed on the wooden board, he failed to state the results of his analysis of the other items referred to by the prosecutor. In his closing argument the prosecutor repeated his assertion that the bloodstained shorts had been obtained from the hospital and urged that the bloodstain proved the defendant a liar when he claimed he was not aware until the police arrived, that the child had been seriously hurt. The prosecutor again repeated the same assertion that the chemist testified that the stains were blood type O, the same as Shawn's, which in fact he had never testified to at trial.

■■■ Assumptions and statements of fact which are not based upon evidence admitted at trial, may not properly be argued to the jury. (*People v. Beier*, 29 Ill. 2d 511, 194 N.E.2d 280.) Upon similar reasoning the prosecutor cannot comment during his opening statement upon what testimony will be introduced at trial and then fail to produce such

testimony. Such arguments and comments effectively assert the prosecutor's own unsworn testimony in lieu of competent evidence. (*People v. Vasquez*, 8 Ill. App. 3d 679, 291 N.E.2d 5.) Defendant was entitled to have the probative value of these exhibits introduced by the State weighed on the basis of evidence introduced at trial, not upon the unsworn testimony of the prosecutor. The principal issue in this case was whether it was the defendant or his wife who administered the beatings. As such, the credibility of the defendant was of great concern to the jury's resolution of guilt or innocence. By saying the bloodstained shorts proved defendant a liar, the prosecutor magnified the prejudicial effect of the earlier errors. As a result of the cumulative effect of the errors previously stated, defendant did not receive a fair trial free from prejudicial error. While our decision to reverse and remand because of the errors previously set forth, eliminates any need to discuss other comments made by the prosecutor during his final argument and which are set out in a bystander's report, we are confident that such comments will not occur on remand. Since the cause must be remanded for a new trial, it is appropriate to discuss a further objection by defendant that is certain to reoccur at a new trial.

Defense counsel maintained throughout the trial that the State's chief witness, Eleanor Rogers, had been offered favorable treatment for her admitted participation in the offense in return for her testimony at trial. Mrs. Rogers denied that any such promise had been made. When defense counsel on cross-examination asked Eleanor what her attorney had represented what would happen to her on the charges, the Assistant State's Attorney interposed an objection based on the attorney-client privilege, an objection which was echoed moments later by Mrs. Rogers' attorney, Michael Warner, and the objection was sustained. Mrs. Rogers continued to deny that the State had promised to dismiss the charges against her in return for her testimony, although she equivocated when pressed on the point. After the trial court denied defendant's request to call Mr. Warner as a witness, counsel sought to call him on the offer of proof, a request which was denied by the court. The State's Attorney objected to Warner being called to testify "about his conversation with either his client or me concerning this case." It was his position that he had no conversations directly with the witness, but declined to disavow that he had had any conversation with the witness's attorney. The State's Attorney repeatedly refused to deny defense counsel's charges that he intended to dismiss charges against Eleanor Rogers. In denying defendant's request, the trial judge concluded that there was no reason for allowing Warner to testify since it was Eleanor's prejudice or bias that was at issue and she claimed to have no knowledge of an agreement. Shortly

after defendant was sentenced, the indictment against Eleanor Rogers was dismissed. The order entered recited that the indictment was dismissed as "part of a negotiated plea."

■■ As a matter affecting credibility, a defendant has the right to inquire about any interest, bias, or motive to testify falsely on the part of the witness. Thus the defendant is entitled to cross-examine a witness as to whether the witness "has received, been promised, expects to obtain, or hopes for, leniency or immunity in consideration for his testimony." (*People v. Bolton*, 10 Ill. App. 3d 902, 908, 295 N.E.2d 11, 16.) In *People v. Werhollick*, 45 Ill. 2d 459, 259 N.E.2d 265, our supreme court held that the attorney-client privilege did not protect all communications during conversations among the witness, his attorney and the State's Attorney. The witness in *Werhollick* denied the existence of any promises by the State's Attorney of leniency. While the witness's counsel admitted to having several conversations with his client and the State's Attorney, he claimed the attorney-client privilege when asked about the content of those conversations. The supreme court in announcing its decision stated:

> "Matters which the client intends his attorney to disclose to a third person (who is not the agent of either the client or the attorney) are not privileged. [Citations.] Thus, any offer or acceptance of an offer made by Bodnar [the witness] through his attorney to the State's Attorney to become a prosecution witness in return for a promise of leniency or immunity is not privileged." (45 Ill. 2d 459, 462, 259 N.E.2d 265, 266.)

Contrary to the attempts by the State to distinguish *Werhollick*, the case is dispositive of the issue before us. Since the witness here was an admitted participant in the events which culminated in Shawn's injury, her credibility was already suspect. Defendant was entitled to establish whether or not the witness's credibility was further affected by promises of leniency or immunity. Should the question arise on remand, the trial court will conduct a hearing to establish if communications between the State's Attorney and the witness's attorney engendered even a suggestion of cooperation in exchange for the witness's testimony. If so, then, within the confines of the *Werhollick* case, defense counsel shall have the opportunity to examine Eleanor and her attorney in the presence of the jury about such an arrangement.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed and remanded.

Judgment reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.