THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN DOE, Defendant.—(JOHN WOSIK, Respondent-Appellant.)

Third District   No. 77-455

Opinion filed April 25, 1978.—Rehearing denied May 31, 1978.

Melvin B. Lewis, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago and John Grivetti, State's Attorney, of Hennepin (Thomas Connors, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Putnam County which found respondent Wosik, an attorney, in contempt of court and imposed a fine

in the sum of $500 upon him when he, the respondent, refused to surrender to a grand jury a document characterized as a suicide note and which he had received from someone other than the author of the note.

In July of 1977 Larry Bogner was under indictment in Putnam County for the crime of rape. On August 1, 1977, Larry Bogner was found in his bedroom unconscious as the result of an apparent suicide attempt. Greg Bogner, the brother of Larry, found the suicide note in his brother's room and took it with him to the hospital where his brother Larry had been taken for treatment.

On August 31, 1977, various members and friends of the Bogner family were called before the Putnam County grand jury.[1]

Cathy Schrock, a roommate of Larry's sister Linda, testified that she had seen and briefly scanned the note but could not remember what it said. Mary Scheer, a girl friend of Larry, testified that she had read the note at the hospital, along with Greg Bogner and Linda Bogner. Linda Bogner testified that she saw the note at the hospital, that it consisted of two pages and that it was given to her by her brother Greg and that she in turn gave it to her parents in the afternoon of August 1, 1977, when in the company of her parents she was at the home of attorney Wosik. At this meeting attorney Wosik also read the note and then kept the same. It was the testimony of Linda Bogner that the family went to the home of Wosik for the purpose of discussing the rape charges which were pending against her brother Larry.

A subpoena was served upon attorney Wosik commanding him to appear on September 6, 1977, before the Putnam County grand jury and to bring with him various documents including any suicide note authored by Larry Bogner. This command was later limited to a request for only the suicide note. Attorney Wosik responded to the subpoena but declined to produce the document requested and claimed that the production of it would be a violation of an attorney-client relationship. The State then filed in the circuit court a petition for rule to show cause. The petition was captioned "People of the State of Illinois vs. John Doe." The petition alleged that the State believed that the attorney-client privilege claimed by attorney Wosik was unavailable to him and the petition prayed that attorney Wosik be ordered to appear before the grand jury and to

---

[1] The respondent-appellant in his brief disclaims that the grand jury was convened for the purpose of obtaining additional information to aid in the prosecution of the pending rape charge against Larry Bogner. With this disclaimer it becomes obvious that the grand jury was concerned with another matter and deemed the suicide note to be of importance.

The grand jury was in fact seeking information as to the cause of death of Kate Judd which occurred on July 31 or August 1, 1977, and who was the grandmother of Larry Bogner. It is clear from that portion of the record filed in our court that Larry Bogner was considered a suspect and such characterization of him was made by both his brother Greg and by counsel for the State and no objections were interposed to this characterization by the respondent-appellant Wosik.

surrender the note given to him on August 1, 1977, and to further testify fully about his conversations with the Bogner family concerning the contents of the note. The petition was later amended to a request for only the production of the note.

Respondent, attorney Wosik, moved to dismiss the petition, which motion was denied. During the rule to show cause hearing respondent Wosik again claimed an attorney-client relationship privilege with his client, presumably said clients being all members of the Bogner family.

At the conclusion of the hearing the trial court held that the attorney-client privilege was not applicable. Upon being asked by the trial judge if he had the note, respondent Wosik refused to answer and adhered to his claim of attorney-client privilege as well as his right to refuse to answer under the fifth amendment which protects one against self-incrimination.

The respondent Wosik was found to be in contempt of court and fined in the sum of $500. This appeal ensued.

Before addressing ourselves to the issues raised in this appeal it should be noted that prior to the oral argument had in this appeal the State filed a motion praying for leave to supplement the record with two grand jury transcripts which they deemed pertinent to this appeal. The respondent Wosik filed objections to this motion and this court has the motion and objections thereto with the appeal for consideration and determination.

Without passing upon the point we are of the opinion that a reviewing court is entitled to a record of grand jury proceedings in a case of this nature. Further, we note that the respondent Wosik both during his rule-to-show-cause hearing and in his objections to the State's motion to supplement the record has fluctuated on the question in that at times through his counsel he has on several occasions indicated that he had no objection to a disclosure as to what the testimony was before the grand jury; however, he would then retreat from this position and object to the additional transcripts being filed. We will accept the latter position as being the one which the respondent desires to maintain.

The trial court refused to permit the entire transcript of the grand jury proceedings to be admitted into evidence. The trial court presumably was concerned with the cloak of secrecy that surrounds such proceedings. This court is also concerned with the secrecy of such proceedings and therefore we rule that the motion of the State to supplement the record is denied. We do not deem it necessary to have before us a transcript of the entire proceedings of the grand jury in order to determine the issues presented in this appeal. Our statement of facts and procedural matters heretofore set forth are terse and succinct. All of such information was obtained only from the transcript of the report of proceedings of the rule-to-show-cause hearing, yet it is sufficient to enable us to make the requisite determinations of the various issues raised.

We will first consider the contention of the respondent that the proceedings in the trial court were procedurally and jurisdictionally defective so as to prevent this court from reaching the attorney-client privilege question. With this contention we do not agree.

The respondent Wosik argues that the State, acting through its prosecutors, was acting in its own behalf rather than acting for the grand jury. He further claims that there was an absence of showing that the production of the suicide note was indispensable to prevent a failure of justice. He quarrels with the caption of the rule-to-show-cause petition, claiming that it should have been entitled "In the Matter of the Putnam County Grand Jury" rather than "People of the State of Illinois." All of these alleged misdeeds according to the respondent Wosik "chilled" Larry Bogner's right to counsel, and ultimately in his words reduced the grand jury to a "puppet status."

■■ The respondent cites no authority to the effect that information or documents must be indispensable to prevent a failure of justice before a grand jury can subpoena such material. We are of the opinion that no authority for such a proposition exists since our supreme court in a case where a grand jury directed a subpoena to an attorney expressly held that a grand jury is not required to have probable cause to subpoena a witness to testify. (*People v. Adam* (1972), 51 Ill. 2d 46, 280 N.E.2d 205.) In the instant case the grand jury did have probable cause to issue the subpoena directed to the respondent. It had heard the testimony of Greg Bogner, Linda Bogner and Cathy Schrock, all of whom saw the note, read the note, but testified that they could not remember its contents. Greg Bogner and Linda Bogner each for a space of time amounting to at least several hours had the note in their exclusive possession. This failure or inability to remember the note's contents established sufficient probable cause for the grand jury to pursue its investigation via the issuance of a subpoena.

The record made at the rule-to-show-cause hearing clearly establishes the fact that the grand jury authorized the State's prosecutors to arrange for the issuance of the subpoena. We harbor serious doubts if any error would have been committed if such specific authorization had not been sought and obtained by the prosecutors. We know of no Illinois law requiring such authorization. While we do not grant it legal precedential value, we deem a recent article in the American Bar Journal to be both interesting and enlightening on this question. In that article which relates to proposed grand jury reforms, one recommendation, to-wit, recommendation No. 12, states, "It shall not be necessary for the prosecutor to obtain approval of the grand jury for a grand jury subpoena." See 63 A.B.A.J. 1237 (Sept. 1977).

As to the procedure to be followed when a witness refuses to honor a grand jury subpoena, we know of no statute setting forth a procedure.

When a grand jury is affronted our court system is affronted, for a grand jury is an integral part of the court. (*People v. Sears* (1971), 49 Ill. 2d 14, 273 N.E.2d 380.) To correct an affront or an alleged affront to a grand jury, a rule to show cause proceedings is in our opinion a proper method of determining whether one should or should not be held in contempt. *People v. Doe* (1977), 55 Ill. App. 3d 811.

■■ We find no merit in the respondent's contention that the rule to show cause petition was incorrectly captioned. The same procedure was followed in the above quoted case from the Second Appellate Court District. In our opinion the caption "People v. John Doe" serves to insulate from public identity a suspect under investigation but not charged with a crime. From the record it is clearly evident that the State made a diligent effort to protect the identity of the suspect and the only testimony adduced before the grand jury which was admitted as evidence in the rule-to-show-cause hearing was admitted after the respondent waived any objections to such admission.

■■■ The respondent makes several other random contentions that the proceedings against him were procedurally defective. One such contention is that it was improper for the State's prosecutors to initiate the rule to show cause action, but that instead such action should have been instigated by the grand jury. Our supreme court has recognized that a grand jury cannot proceed with an investigation without the investigatory staff of the State's Attorney and that it cannot prepare subpoenas or indictments. (*People v. Sears* (1971), 49 Ill. 2d 14, 273 N.E.2d 380.) Our supreme court in *Sears* recognized that legal documents necessary to a grand jury investigation must as a practical matter be prepared by legal counsel. It is elementary that a petition for rule to show cause is a legal document and in its preparation required the knowledge of one trained in the law. In the instant case it is abundantly clear that the Putnam County grand jury authorized the State prosecutors to prepare and have issued a subpoena commanding the respondent Wosik to produce the suicide note. Upon the respondent's refusal to comply it would be illogical to assume that this phase of the investigation would be abandoned. Upon the respondent's refusal to comply with command of the subpoena the rule to show cause proceedings were not only to be expected but in fact it was incumbent on the prosecutors to institute the same. Failure to commence such proceedings in the instant case could have sustained a charge that the prosecutors were derelict in their duties. When the grand jury authorized the issuance of the subpoena they also authorized whatever legal action that was necessary to enforce their efforts to obtain production of the note. The respondent further argues that Larry Bogner should have received notice of this proceedings before the trial court. We fail to comprehend how Larry Bogner's rights were in any way infringed

upon by the fact that he was not served·with notice of the rule-to-show-cause hearing. Larry Bogner's rights were well protected by the respondent's assertion of the attorney-client privilege; his presence before the trial court would have had no effect on the proceedings.

We reiterate our previous statement to the effect that we find no merit in the respondent's contention that during the trial court proceedings there were procedural and jurisdictional defects of such nature as to prevent this court from making a determination of the attorney-client privilege question.

Concisely stated, the paramount issue in this appeal is whether the suicide note authored by Larry Bogner, found by Larry's brother, and delivered by members of Larry's family to the respondent, an attorney, is such a communication as to become privileged under the attorney-client relationship rule.

The purpose of the attorney-client privilege is to promote freedom of communication among attorneys and their clients by removing fear of compelled disclosure by lawyers of confidential information. The client must be assured that information conveyed in confidence will not be ordinarily disclosed. The attorney-client privilege, however, is not absolute, for arrayed against it is the public's interest in obtaining disclosure of evidence. *Taylor v. Taylor* (1977), 45 Ill. App. 3d 352, 359 N.E.2d 820.

■■ Our supreme court, by recognizing the conflict that exists between the attorney-client privilege and the public's interest in the disclosure of evidence, has set forth the criteria for the attorney-client privilege in the case of *People v. Adam* (1972), 51 Ill. 2d 46, 280 N.E.2d 205. In the case of *Adam* our supreme court set forth the essential elements which must be present to create and continue in existence the attorney-client privilege. Those essential elements are as follows:

> "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *People v. Adam* (1972), 51 Ill. 2d 46, 48, 280 N.E.2d 205, 207.

■■ After applying the foregoing criteria, all of which must be present to the note in the instant case, which ultimately ended up in the possession of the respondent, we then must ask ourselves if an attorney-client privilege was created which continues to exist. The answer to such a question must be in the negative. Was the note in question a communication to an attorney? The answer is no. There is no claim that the note contained an addressee who was an attorney. In fact, there is no evidence that the

note was addressed to anyone. It was found in Larry Bogner's room after he had been taken to the hospital and after some hours had elapsed, during which time a number of individuals both family and nonfamily had been in the room. The mere fact that the note found its way into the hands of an attorney does not make it a communication to that attorney by the author. Was the note a communication made in confidence and for the purpose of seeking or receiving legal advice? Again we must answer a crucial question in the negative. As we have previously stated, the note lacked the element of confidentiality in that it was found in open view in Larry Bogner's room. It obviously was not a confidential communication to an attorney seeking legal advice. The respondent does not claim that the communication was addressed to him, that it was confidential and seeking legal advice, but instead intimates that the note may contain material which might be incriminating to members of Larry's family. As far as Larry Bogner is concerned the note in question clearly fails to meet the criteria necessary to invoke the attorney-client privilege.

■■ We have alluded to the fact that the respondent attempts to invoke the privilege on behalf of the members of Larry's family. The Bogner family may well be clients of the respondent, but we are concerned with a note authored by Larry Bogner, not by the members of his family. The fact that the note as intimated by the respondent contains material possibly incriminating to some or all of the family members still does not cloak it with the attorney-client privilege. The purpose of the privilege is not to withhold damaging information from the courts. The respondent refers to the note as possibly having "evidentiary potential," and if by this term he means that it may contain information harmful to family members, then we can only conclude that such information was not set forth in writing by the family members but by Larry Bogner apparently just prior to the time he attempted to commit suicide, ergo, the note is not privileged. It should be specifically noted that the State is seeking production of the note only and not any information concerning conversations or other transactions that occurred between the Bogner family and the respondent.

We must also refute the claim that the family members should be viewed as agents who transmitted a privileged communication from their son Larry to the respondent. Such a claim must presuppose that Larry intended to communicate with an attorney in confidence. We have already determined that Larry had no such intention and hence the agency theory must fall. Even if we accepted the argument that Larry's family constituted agents for the purpose of transmitting a privileged communication, then said agents violated their duties to their putative principal, to-wit Larry, by disclosing the confidential material in the note to Schrock and Scheer, two nonfamily individuals. The reason for

prohibiting disclosure ceases when the client does not appear to have a desire for secrecy. See 8 Wigmore, Evidence §2311, §599 (McNaughton rev. ed. 1961).

The respondent in his brief presents a number of theories which he contends support his claim that the communication in the instant case falls within and is barred from disclosure by the attorney-client privilege. For the reasons we have set forth we cannot agree with the theories propounded by the respondent.

The judgment of the circuit court of Putnam County finding the respondent Wosik guilty of contempt of court and the fine imposed thereon is affirmed.

Affirmed.

STENGEL, P. J., and ALLOY, J., concur.