MARISU CESENA, Adm'r of the Estate of Timothy J. Golden, Deceased, Plaintiff-Appellee, v. DU PAGE COUNTY *et al.*, Defendants (Jeffrey B. Fawell, Contemnor-Appellant).

Second District    No. 2—89—0867

Opinion filed August 17, 1990.—Rehearing denied September 14, 1990.

WOODWARD, J., specially concurring.

Jeffrey B. Fawell and Bruce R. Fawell, both of Fawell & Fawell, of Wheaton, and George Patrick Lynch, Ltd., of Chicago (George P. Lynch, of counsel), for appellant.

Philip H. Corboy and Thomas A. Demetrio, both of Corboy & Demetrio, P.C., of Chicago (Robert J. Bingle, of counsel), for appellee.

Thomas P. Sullivan and Thomas S. O'Neill, both of Jenner & Block, of

Chicago, for *amicus curiae* National Association of Criminal Defense Lawyers.

Robert J. Anderson, of Anderson, Deitsch & Associates, P.C., of Wheaton, for *amici curiae* Du Page County Bar Association and Du Page Association of Women Lawyers.

Dennis A. Rendleman, of Illinois State Bar Association, of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE INGLIS delivered the opinion of the court:

Contemnor, Jeffrey Fawell, appeals from an order of the circuit court of Du Page County finding him in contempt of court and imposing a $1,000 fine for each day that he refuses to comply with a court order. Fawell contends that he should not be required to comply with the court order because to do so would result in disclosure of information which the attorney-client privilege protects. We note here that Fawell's position is supported by *amici curiae* briefs of the Illinois State Bar Association (ISBA), the Du Page County Bar Association, and the Du Page Association of Women Lawyers.

This case arose as a result of a traffic accident on September 28, 1987. At approximately 10:35 p.m. that night, Fawell received a telephone call from his law partner informing him that a potential client (John Doe) wished to consult with him regarding an emergency matter. Around 12:15 a.m. on September 29, 1987, Fawell arrived at his law office and met with John Doe. Shortly thereafter, Fawell and John Doe went to the Du Page County sheriff's office to file a report pursuant to section 11—401(b) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b)). However, the sheriff's deputy refused to accept a report, and no report was ever made in this case.

Thereafter, a grand jury investigation was commenced with respect to Fawell's representation of John Doe, and a subpoena was issued upon Fawell to testify regarding his representation of John Doe. Fawell filed a motion to quash the subpoena.

On October 28, 1987, a hearing was held on Fawell's motion to quash the subpoena. Fawell testified that he and his client went to the sheriff's office to file a report pursuant to the Code. Fawell stated that he walked up to a "window" and began to read a prepared written statement to Deputy Paine but was stopped and told to give the written statement to Paine. Fawell handed the report to Deputy Paine, who, after reading where the accident occurred, informed Fa-

well that the report had to be submitted to the Illinois State Police department because the accident occurred on the tollway (I-88). Fawell informed Paine that it was proper to file the report at the sheriff's office and that he was under a time constraint because the report had to be made within three hours of the accident. Paine then told Fawell that he had 48 hours to file the report and again stated that it must be done at the Illinois State Police department office in Oak Brook. After further discussion, Fawell and his client left the sheriff's department. At no time did Fawell reveal his client's name to Deputy Paine.

Fawell further testified that he received a telephone call from an Illinois State Police officer requesting his client's name, but Fawell refused to disclose the information. Two Du Page County assistant State's Attorneys made similar requests, but Fawell continued to refuse to identify his client.

On cross-examination, Fawell testified that he called the State Police department after the sheriff's office refused to accept the report, but only did so for "humanitarian" reasons. Fawell was not aware that the automobile accident at issue in this case involved a fatality when he went to file the report at the sheriff's office.

Deputy James Paine of the Du Page County sheriff's department testified that he spoke with Fawell on the night in question and agreed that he told Fawell to report the accident to the Illinois State Police department. Paine stated that he never saw Fawell's client and that Fawell never tendered a written report to him, although Fawell did begin to read the report to him.

On cross-examination, Paine denied telling Fawell that he had 48 hours to file the report. He did admit, however, that he could have accepted the report instead of directing Fawell to the Illinois State Police department. Paine also agreed that Fawell's client could have been with Fawell at the sheriff's office but that he did not see him.

On November 6, 1987, the trial court granted Fawell's motion to quash the grand jury subpoena. Judge Nelligan reasoned that an attorney-client relationship existed between Fawell and John Doe, and, although the client's identity was generally not privileged information, it was privileged in this instance because the client's identity "would provide the necessary link to the State to institute a prosecution for a serious felony offense against the client."

On September 28, 1988, plaintiff, Marisu Cesena, as administrator of the estate of Timothy Golden, filed the lawsuit now before us naming Du Page County, the sheriff of Du Page County, and Mitchell Paine as defendants. The complaint alleged that Timothy Golden was

killed when he was hit by an automobile while he was walking on I-88. It further alleged that defendants were negligent in that they failed to obtain the relevant information concerning the accident, including the identity of the driver of the automobile (John Doe).

On March 10, 1989, Fawell refused to answer certain questions asked at his deposition relating to John Doe's identity. Thereafter, plaintiff made a motion pursuant to Supreme Court Rule 219(a) (107 Ill. 2d R. 219(a)) to compel Fawell to answer the questions. On August 22, 1989, following numerous continuances, the trial court heard arguments on the motion to compel. On August 28, 1989, Judge Peccarelli ordered Fawell to answer four questions and continued the case to the following day. The four questions were:

> "Would you please state to me the name and address of the individual that you met with on the evening of September 28, early morning hours of September 28th, 1987?
> \*\*\*
> Did that individual at that time inform you as to an incident in which he had been involved in on I-88 that evening?
> \*\*\*
> What did you tell him [Deputy Paine] with reference to the location?
> \*\*\*
> Did you ever view the automobile that this individual was driving on the night of September the 28th, 1987?"

On August 29, 1989, Fawell informed the court that he would not answer the questions that he was ordered to answer. Fawell's motion to reconsider was denied, and the court subsequently found Fawell in direct civil contempt of court. Fawell was fined $1,000 per day and ordered incarcerated until he answered the questions. Fawell was released on his own recognizance, and the enforcement of the order was stayed until September 5, 1989.

On August 29, 1989, Justice Woodward granted Fawell's emergency motion requesting a stay of the trial court's order. The order effectively stayed the trial court's order until August 30, 1989. On August 30, 1989, Justice Woodward continued the stay until September 8, 1989.

On September 7, 1989, this court denied Fawell's emergency motion to stay the trial court's order pending appeal. On September 8, 1989, the Illinois Supreme Court granted Fawell's request to stay the appellate court order until further order of the court. On September 14, 1989, the supreme court granted Fawell a stay of the trial court's order pending appeal. This appeal followed.

██ █ Initially, we must determine whether Fawell and John Doe had established an attorney-client relationship before we decide if the questions involved in this case solicited privileged information. The attorney-client privilege is recognized as one of "the oldest of the privileges for confidential communications known to the common law." (*Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591, 101 S. Ct. 677, 682; 8 J. Wigmore, Evidence, §2290 (McNaughton rev. 1961); see Hazard, *An Historical Perspective on the Attorney-Client Privilege*, 66 Calif. L. Rev. 1061, 1071 (1978).) The attorney-client privilege exists to enable a person to consult freely and openly with an attorney without any fear of compelled disclosure of the information communicated. (*People v. Adam* (1972), 51 Ill. 2d 46, 48, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289; *Knief v. Sotos* (1989), 181 Ill. App. 3d 959, 964.) The privilege has been described as being essential "to the proper functioning of our adversary system of justice." (*United States v. Zolin* (1989), 491 U.S. 554, 562, 105 L. Ed. 2d 469, 485, 109 S. Ct. 2619, 2626.) The essentials of the creation of the attorney-client privilege have been defined as follows:

" '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.' " *Adam*, 51 Ill. 2d at 48, quoting 8 J. Wigmore, Evidence, §2292, at 554 (McNaughton rev. 1961).

██ In the present case, Fawell testified at his hearing to quash the grand jury subpoena that John Doe sought out his legal advice with the expectation that any communications would remain confidential. According to Fawell, all communications were made in confidence and related to the purpose that John Doe was soliciting Fawell's advice. Fawell also stated that John Doe told him that he would not waive the privilege. We do note that the court did not hear from John Doe as to the interview and his expectations concerning the communications. Under these circumstances, it is our opinion that, based on Fawell's testimony at the hearing, an attorney-client relationship was established between Fawell and John Doe such that the privilege would apply to the communications on the night in question.

██ However, the attorney-client privilege is not absolute. (*Taylor v. Taylor* (1977), 45 Ill. App. 3d 352, 354.) This is so because a conflict exists between the client's expectation that the communications remain confidential and the public's interest in the disclosure of evi-

dence. (*People v. Doe* (1978), 59 Ill. App. 3d 627, 633; *Taylor*, 45 Ill. App. 3d at 354.) Consequently, we must balance these two competing interests in this case with respect to whether Fawell must answer the four questions which the trial court ordered him to answer. We will address each question in turn.

We note here that counsel for plaintiff, at oral argument, waived consideration of question numbers two and four. Consequently, we will limit our review in this case to the two remaining questions.

Question number one requested Fawell to state "the name and address of the individual that you met with on the evening of September 28, early morning hours of September 29th, 1987?" Fawell argues that the identity of his client was privileged information because it was never communicated to a third party and was not waived. Fawell asserts that the attempt to report the accident, including his client's name, was under compulsion of a felony prosecution (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b)) and hence not voluntary. In addition, Fawell contends that John Doe's identity would be the "last link" necessary to bring adverse judicial proceedings, both civil and criminal, against his client.

Plaintiff disagrees, arguing instead that no privilege existed with respect to the client's identity because the requirements of section 11—401(b) of the Code do not violate an individual's right against self-incrimination. Furthermore, plaintiff asserts that John Doe waived any privilege with respect to his identity because he never intended his identity to be confidential.

It must be pointed out that this question, by its terms, does not ask Fawell to reveal the name of his client who was involved in the automobile accident on the night in question. The question does *not* ask who accompanied Fawell to the sheriff's office that night or even what information the report contained. Either of these questions would, by necessity, force Fawell to reveal John Doe's identity. Instead, the question asks Fawell whom he "met with" during the "evening" of September 28 and "early morning hours" of September 29. The question poses a problem if Fawell "met with" individuals other than John Doe during the times in question. However, the questions before and after the question of whom Fawell "met with" seem to limit the "individual" to John Doe, although the question could have been phrased to leave no doubt as to limiting the question to John Doe's identity. Given that both parties briefed, argued, and generally agreed that this question seeks John Doe's identity from Fawell, we will review this question with these considerations in mind.

■ The general rule in Illinois is that a client's identity is not

protected under the attorney-client privilege. (*People v. Williams* (1983), 97 Ill. 2d 252, 295, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *Shatkin Investment Corp. v. Connelly* (1984), 128 Ill. App. 3d 518, 525; *People v. Doe* (1977), 55 Ill. App. 3d 811, 814.) While disclosure of the client's identity is generally favored, there are two situations in which the identity falls within the protection of the privilege. First, the client's identity will be protected when it is shown to be in the public interest to do so. (*Shatkin Investment Corp.*, 128 Ill. App. 3d at 525; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §505.4, at 257 (4th ed. 1984).) Second, the identity is privileged if it appears that the client will be prejudiced in "some substantial way" if his identity were disclosed. *Williams*, 97 Ill. 2d at 295; *Doe*, 55 Ill. App. 3d at 814; R. Ruebner, Illinois Criminal Trial Evidence, ch. 3, at 50-51 (1986).

Fawell does not argue that John Doe's identity is protected because it is in the public interest to do so, but instead argues that the second exception listed above applies in this case. Fawell argues that his client will be subjected to a felony prosecution for not reporting the accident within three hours after it occurred (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b)), along with the possibility of having his driving privileges revoked and becoming the focus of a civil lawsuit.

Plaintiff disagrees, arguing that had Deputy Paine accepted the report, including the client's name, on the night in question, John Doe would have been subject to all of the above-mentioned penalties except being charged with a felony for failing to report the accident within the specified time period. In addition, plaintiff included a letter in the appendix to its brief from the Du Page County State's Attorney's office, dated September 12, 1989, which stated that John Doe would be placed back in the same legal position he would have been in had Deputy Paine accepted the report. Thus, according to the letter, John Doe would not be subject to the felony charge for not reporting the accident. Plaintiff concludes that the unique circumstances present in this case do not rise to the level to be recognized as an exception to the general rule favoring disclosure of a client's identity.

We note here that Fawell filed a motion to strike the letter from the Du Page County State's Attorney's office from plaintiff's brief. Fawell argued that the letter was dated September 12, 1989, 13 days after the notice of appeal was filed, and thus was not in existence during the trial court proceedings. We granted Fawell's motion on April 5, 1990, and will consider this appeal in accordance with this ruling.

■ Addressing the merits of this issue, we agree with Fawell

that the disclosure of John Doe's identity could prejudice John Doe in "some substantial way." (*Williams*, 97 Ill. 2d at 295.) Should Fawell be required to reveal his client's name, the client would be faced with potential criminal and civil liability. Admittedly, John Doe would have been faced with a possibility of criminal and civil liability had Deputy Paine accepted the report on the night in question. However, he would not have been subjected to the possibility of being charged with a felony for failing to report the accident had Deputy Paine accepted the report. We thus conclude that the "substantial harm" exception to the general rule favoring disclosure applies under the specific facts in this case.

We find support for our decision in the recent decision in *In re Grand Jury Proceeding, Cherney* (7th Cir. 1990), 898 F.2d 565. In *Cherney*, the court noted that a client's identity is protected where disclosure would reveal a client's reason for seeking legal advice. (*Cherney*, 898 F.2d at 568.) The *Cherney* court was faced with a situation in which attorney Cherney was representing Jack Hrvatin in a drug conspiracy case. Hrvatin's fees were paid by an unidentified person who also sought Cherney's legal advice concerning the conspiracy. The court of appeals held that the unidentified client's identity was privileged because its disclosure "would be tantamount to revealing the premise of a confidential communication: the very substantive reason that the client sought legal advice in the first place." 898 F.2d at 568.

A similar result was reached in *In re Witness—Attorney Before Grand Jury No. 83—1* (S.D. Fla. 1984), 613 F. Supp. 394. In *Witness—Attorney*, the attorney refused to reveal the identity of his client(s) because the attorney received the information in confidence, and to reveal such a confidence would provide the government with the "last link" in an existing chain of incriminating evidence likely to lead to the indictment of the client(s) on drug-smuggling charges. (*Witness—Attorney*, 613 F. Supp. at 398-99.) The district court agreed, holding that the information was privileged based on the "last link" exception. (613 F. Supp. at 399.) The court noted that the attorney-client relationship must be maintained "even though the result may be distasteful." 613 F. Supp. at 400.

Several other courts have reached similar results. See *Tillotson v. Boughner* (7th Cir. 1965), 350 F.2d 663 (client's identity privileged where disclosure would result in prejudice and identity was a confidential communication); *Baird v. Koerner* (9th Cir. 1960), 279 F.2d 623, 633 (identification privileged if disclosure would reveal the "ultimate motive of litigation" and be the "link that could form the chain

of testimony necessary to convict an individual of a federal crime"); *Ravary v. Reed* (1987), 163 Mich. App. 447, 415 N.W.2d 240 (disclosure of client's name not required because it would be tantamount to disclosing the substance of a confidential communication). See generally *Asserting the Attorney-Client Privilege: Client Identity, Fee Information, Whereabouts, and Documents*, 3 Georgetown Journal of Legal Ethics 113 (1989); 81 Am. Jur. 2d *Witnesses* §213 (1976).

■■ Our result here is consistent with the balancing test set out in *People v. Doe* (1977), 55 Ill. App. 3d 811. In *Doe*, the court stated that a balance must be struck between the purpose of the attorney-client privilege and the public interest in obtaining disclosure of evidence. (*Doe*, 55 Ill. App. 3d at 814.) The court favored disclosure of Doe's identity because there was "no suggestion" that the client would be incriminated or in any way harmed if his identity was revealed. (55 Ill. App. 3d at 814-15.) Thus, there was no reason to deviate from the general rule that the client's identity is not privileged.

In the present case, the client's identity was a confidential communication of which disclosure could result in "substantial harm" to him. Thus, this is one of the unique and unusual cases in which an exception to the general rule favoring disclosure must be recognized.

Having determined that an exception to the general rule applies in this case, we must next address the question of whether a waiver of the privilege occurred when the client attempted to reveal his identity but was unsuccessful in doing so. We answer this question in the affirmative and hold that the client did waive his claim of privilege with respect to his identity under the specific facts of this case.

■■ ■ We note that the attorney-client privilege can be waived, but only by the client. (*People v. Mudge* (1986), 143 Ill. App. 3d 193, 195.) This is so because the privilege belongs to the client, and not to the attorney. (*People v. Duarte* (1979), 79 Ill. App. 3d 110, 125; *People v. Marcofsky* (1920), 219 Ill. App. 230, 232; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §505.6, at 259 (4th ed. 1984).) Plaintiff contends that "John Doe never intended his identity to be confidential. He thereby waived any privilege." Plaintiff points out that Fawell conferred with John Doe on the night in question and, as a result, prepared a short written statement to present to the sheriff's office concerning the automobile accident in order to comply with section 11—401(b) of the Code. This section provides, in pertinent part:

> "Any person who has failed to stop or to comply with said requirements shall, within 3 hours after such motor vehicle accident, *** report the place of the accident, the date, the ap-

proximate time, *the driver's name and address,* the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b).)

Plaintiff argues that John Doe waived any possible privilege as to his identity because he never intended his identity to be confidential. Plaintiff points out that John Doe attempted to comply with the reporting provisions contained in the Code, which by its very terms would have required John Doe to disclose his name to the sheriff's deputy. Plaintiff asserts that John Doe's identity did not originate in a confidence and with an understanding that it would not be disclosed. (See *Consolidated Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 119.) Plaintiff makes this waiver argument despite the fact that no report identifying John Doe was ever successfully made to the sheriff's department.

Fawell disagrees, arguing instead that there can be no waiver of the privilege because John Doe was under the "compulsion" of section 11—401(b) of the Code to make the report after the accident. Fawell points out that John Doe attempted to file the report only to avoid "becoming a convicted felon." Fawell asserts that the attempt to file the report was involuntary and, furthermore, that no report divulging John Doe's identity was ever accepted.

In support thereof, Fawell cites *New Jersey v. Portash* (1979), 440 U.S. 450, 59 L. Ed. 2d 501, 99 S. Ct. 1292. In *Portash,* the defendant was granted immunity to testify before a grand jury. Thereafter, he was charged with a criminal offense. The trial court ruled that the State could use the immunized grand jury testimony to impeach the defendant's credibility at trial. The Supreme Court disagreed, holding that testimony given in response to immunity is "the essence of coerced testimony." (*Portash,* 440 U.S. at 459, 59 L. Ed. 2d at 510, 99 S. Ct. at 1297.) The Court noted that the testimony was "compelled" and thus could not be used to impeach him at a later criminal trial.

▮▮ Fawell contends that *Portash* supports his position because the statute in the case at bar also contains an immunity clause. This clause states:

"No report made as required under this paragraph shall be used, directly or indirectly, as a basis for the prosecution of any violation of paragraph (a)." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b).)

In order to encourage compliance with this section, the legislature has determined that a person who fails to comply "shall be guilty of a

Class 4 felony." Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(d).

Fawell also points out that other courts have determined that a waiver of the attorney-client privilege does not occur when the testimony is involuntarily given. In *Simpson v. Braider* (D.D.C. 1985), 104 F.R.D. 512, the Federal magistrate pointed out that testimony given pursuant to a subpoena, to defend against criminal charges, or "under circumstances indicating there was realistically no voluntary disclosure" should not result in a waiver of the attorney-client privilege. *Simpson*, 104 F.R.D. at 523; see also *Transamerica Computer Co. v. International Business Machines Corp.* (9th Cir. 1978), 573 F.2d 646, 651 (privilege waived only if the disclosure of confidential material is "voluntary and not compelled").

We find *Portash* and *Simpson* to be distinguishable from the specific facts in the present case. Initially, we note that *Simpson* involved a waiver question in the context of the physician-patient privilege and did not involve an attorney-client relationship like that present in the case at bar. Furthermore, *Portash* did not involve the attorney-client privilege, but instead was concerned with waiver under a fifth and fourteenth amendment analysis.

■■■ Notwithstanding these distinctions, we also note that our case does not involve testimony given pursuant to immunity at a grand jury proceeding or testimony pursuant to a subpoena. In these instances, the testimony was compelled because the person so testifying had no reasonable way to avoid the grand jury or subpoena. Instead, our case involves John Doe's attempt, presumably pursuant to Fawell's advice, to report the accident to the sheriff's office. Thus, it is evident that John Doe intended, at least on the night in question, that his name be revealed in order to comply with section 11—401(b) of the Code. John Doe chose to comply with the reporting provisions of this section in order to avoid being prosecuted for a felony. The statute itself did not compel him to do so. This situation is unlike the above-mentioned cases in that the client here *intended* to disclose the information and was not forced or compelled to do so.

Furthermore, it is important to point out that the reporting provisions of section 11—401(b) of the Code do not require the driver of the automobile to relate the circumstances or details of the accident itself. This section simply requires a driver to identity himself or herself without providing any information which may indicate that a criminal offense had actually occurred.

With respect to Fawell's argument that the reporting requirement "compelled" John Doe into making a report, we note that our supreme court has determined, in *People v. Lucus* (1968), 41 Ill. 2d 370,

that requiring a driver to reveal his name and address does not infringe upon the driver's "guaranty against self-incrimination." (*Lucus*, 41 Ill. 2d at 373-74.) The court noted that the act of identification, by itself, in no way relates to the circumstances of the accident or provides information concerning the details of the event. (41 Ill. 2d at 374.) While *Lucus* involved the construction of section 135 of the Code (now codified as section 11—403 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—403)) and also involved a fifth amendment claim as opposed to an attorney-client privilege analysis, we find its reasoning concerning the requirement of providing a driver's name and address persuasive under the facts in the case at bar.

Furthermore, our supreme court has also determined that matters a client intends to disclose to third parties, who are not agents of either the attorney or client, are not privileged. (*In re Himmel* (1988), 125 Ill. 2d 531, 542; *People v. Werhollick* (1970), 45 Ill. 2d 459, 462; see also *People v. Adams* (1983), 116 Ill. App. 3d 315, 322 (information intended to be revealed to third parties not privileged).) Given that John Doe intended to disclose the information concerning his identity to a third party (Deputy Paine), we find that any privilege he had with respect to his identity was waived.

We next address the issue of whether it would have been unethical for Fawell to reveal the identity of his client in this case. Fawell contends that John Doe's identity is a "confidence" or "secret" which cannot be disclosed under the Code of Professional Responsibility. The ISBA devotes a considerable portion of its brief in support of Fawell's position on this issue.

■ According to Canon 4 of the Code of Professional Responsibility, which our supreme court has adopted, an attorney "should preserve the confidences and secrets of a client." (107 Ill. 2d Canon 4.) A "confidence" is defined as "information protected by the attorney-client privilege under applicable law," while a "secret" involves "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing to or would likely be detrimental to the client." 107 Ill. 2d R. 4—101(a).

●13 We have already determined that John Doe's identity in this case was privileged information. Thus, had there been no waiver of the privilege with respect to this information, Fawell would not be forced to disclose his client's identity. Our determination on this issue would certainly classify John Doe's identity, but for the waiver, as a "confidence" pursuant to Rule 4—101(a). However, because we have already determined that John Doe waived the privilege with respect

to his identity, we do not believe that his identity can be properly classified as a "confidence."

■■■ Furthermore, even if we were to find that John Doe's identity was a "secret," we still do not believe that it would have been unethical for Fawell to reveal John Doe's identity. Plaintiff correctly points out that an exception to Rule 4–101(a) exists in this case because Fawell is under a court order to reveal his client's identity. Rule 4–101(d)(2) states that an attorney may reveal "confidences or secrets when permitted under disciplinary rules or required by law or *court order*." (Emphasis added.) (107 Ill. 2d R. 4–101(d)(2).) Thus, revealing John Doe's identity, even though it may be classified as a confidence or secret, would not subject Fawell to discipline for violating the Code of Professional Responsibility.

■■ We agree with the ISBA's position that even though a court order has directed Fawell to reveal John Doe's identity, the decision is still within Fawell's discretion based on our Code of Professional Responsibility. This is the case because Rule 4–101(d)(2) states that an attorney "may," and not "shall," disclose client confidences when under a court order to do so. The ISBA points out that ISBA Opinion No. 538 (August 27, 1976) addressed a similar issue and determined that the attorney's decision whether to disclose the client's identity was discretionary, with neither decision violating the Code of Professional Responsibility.

■■ The trial court was aware of the inherent conflict Fawell faced between complying with the court order and not revealing any confidences of his client. The court stated:

> "I think the Court must by its inherent power—and I do this with reluctance. I have a great deal of respect for Mr. Jeff Fawell and both counsel that appear before me.
>
> By the same token, we have a difference of opinion. And that's all been announced, even with that great respect I have for him, Mr. Fawell, Jeffrey Fawell.
>
> However, I must enforce my orders.
> ***
> I know Mr. Fawell is an honorable lawyer ***.
> * * *
> *** I do this with all due respect to Mr. Fawell.
> ***
> I know it's done as a difference of opinion."

We also realize the predicament Fawell is faced with in this case as he attempts to harmonize his ethical responsibility to his client and his duty as an officer of the court. It is our opinion that, given the waiver

of the client's identity in this case, Fawell's duty to obey the court order, at least with respect to question number one, must supersede his perceived ethical duty to his client to keep the identity a "secret." Thus, we hold that the trial court properly ordered Fawell to answer the first question. By answering this question, Fawell will not be violating the Code of Professional Responsibility.

We must next address the propriety of the other question at issue in this appeal. Question number three asked Fawell to reveal what he told Deputy Paine with reference to the location of the accident. The answer to this question is clearly not protected by the attorney-client privilege. The question, by its very terms, asks Fawell to reveal information which he disclosed to a third party (Deputy Paine). Thus, even if this information was obtained through confidential communications with John Doe, it is evident that the disclosure to the third party, who was not the agent of the client or Fawell, resulted in the waiver or destruction of the privilege. (*Werhollick*, 45 Ill. 2d at 462; *In re Lanaswager* (N. D. Ill. 1975), 392 F. Supp. 783, 786; see also *Spencer v. Burns* (1952), 413 Ill. 240, 248 ("communications made by a client to an attorney for the purpose of being disclosed by him to others do not fall within the rule of privilege").) The justification for this rule is that communications are not considered to be made in confidence when they are intended to be disclosed to a third party. (*Henderson v. National R.R. Passenger Corp.* (N.D. Ill. 1986), 113 F.R.D. 502, 509; *Suburban Sew 'n Sweep, Inc. v. Swiss-Bernina, Inc.* (N.D. Ill. 1981), 91 F.R.D. 254, 258-59.) Absent any attorney-client privilege with respect to this question, we find no error in the trial court's order requiring Fawell to answer the question.

In sum, we hold that the trial court properly ordered Fawell to answer questions one and three. We need not address the propriety of questions two and four due to the fact that plaintiff waived consideration of these questions during oral argument in this case.

We must next address the final issue in this case: namely, whether the contempt order violated Fawell's due process rights and whether the sentence imposed was excessive. Fawell argues that he was not notified as to the charges against him because there was no citation or charge filed against him. Fawell also asserts that he was unable to present an appropriate defense and was not proved guilty beyond a reasonable doubt. In order to address Fawell's due process argument, we must first determine what type of contempt is involved in this case.

Criminal contempt is conduct which is directed against the dignity and authority of the court. (*People ex rel. Kazubowski v. Ray*

(1971), 48 Ill. 2d 413, 416, *cert. denied* (1971), 404 U.S. 818, 30 L. Ed. 2d 118, 92 S. Ct. 78; *Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 531.) In comparison, civil contempt is coercive in nature and usually consists of failing to comply with a court order. (*Kazubowski*, 48 Ill. 2d at 416; *In re Estate of Maslowe* (1985), 133 Ill. App. 3d 1043, 1046.) This case involves civil contempt because Fawell's contempt was based upon his failure to comply with a court order, which could be purged by his compliance with the terms of the order. See *People v. Boclair* (1987), 119 Ill. 2d 368, 373; *People v. Rodriguez* (1987), 162 Ill. App. 3d 149, 153-54.

We must also determine whether the contempt in this case was direct or indirect. Direct contempt arises from acts that are committed in the court's presence, while indirect contempt arises from acts that occur outside the presence of the court. (*Central Production*, 156 Ill. App. 3d at 531; *People v. Patrick* (1980), 83 Ill. App. 3d 951, 954.) In the present case, the trial court ordered Fawell to "answer the questions before 4:30 this afternoon." The court then continued the matter to 9:30 a.m. the following day "to find out what happened." Thus, the question of whether Fawell complied with the order involved circumstances existing outside the presence of the court, making this contempt indirect.

Having determined that this case involves indirect civil contempt, we must next decide whether Fawell's due process rights were violated. Ordinarily, the alleged contemnor in an indirect contempt situation is entitled to notice, a fair hearing, and an opportunity to be heard. (*Weglarz v. Bruck* (1984), 128 Ill. App. 3d 1, 8; *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 675.) However, when the alleged contemnor admits such an indirect contempt in court, it may be punished as a direct contempt. *In re Estate of Melody* (1969), 42 Ill. 2d 451, 453.

This is precisely the situation in the case at bar. The trial court asked Fawell, "Have you answered the questions?" to which Fawell's attorney replied, "No, he has not, Judge." Fawell then agreed that he did not answer the questions, even though he understood what the court order required him to do. Fawell's attorney then told the trial court that "[h]e is not going to answer them." Thus, this is an instance where the trial court properly summarily punished Fawell even though the contemptuous conduct occurred out of the court's presence, given that Fawell admitted in open court that he would not comply with the court order. (See *People v. Pomeroy* (1950), 405 Ill. 175, 180.) We find no violation of Fawell's due process rights under these circumstances.

■■■ ■ We next address the propriety of the sentence imposed in this case. Fawell, along with the Du Page County Bar Association and the Du Page Association of Women Lawyers, contends that the $1,000-per-day fine was excessive given the importance of the issue involved and the substantial difference of opinion on this issue. The power to punish for contempt rests within the sound discretion of the trial court, and its decision will not be overturned absent a clear abuse of discretion. (*In re Estate of Wernick* (1988), 176 Ill. App. 3d 153, 156, *cert. denied* (1989), 493 U.S. 809, 107 L. Ed. 2d 19, 110 S. Ct. 50; *Central Production*, 156 Ill. App. 3d at 531.) Given the underlying statute of limitations problem in the civil lawsuit, it is clear that the trial court imposed a severe fine because it was concerned with having Fawell comply with the order in a short period of time. However, the statute of limitations has now run in the civil lawsuit, and thus the immediacy which the trial court was properly concerned with is no longer at issue in this case. Given that the trial court determined that Fawell's refusal to answer the questions was not done in a contemptuous manner, but instead was done based on a difference of opinion, we agree with Fawell that the amount of the fine should be reduced. Under these unusual circumstances, we determine that the fine of $1,000 per day should be reduced to $100 per day, as we now expect Fawell to comply with the court order.

For the above-stated reasons, the order of the circuit court of Du Page County is affirmed with respect to questions one and three. Fawell is directed to answer these questions. The order with respect to questions two and four is vacated, as plaintiff determined not to pursue these questions on appeal. We have also reduced Fawell's fine to $100 per day should Fawell refuse to answer questions one and three.

Affirmed in part, vacated in part, and modified in part.

REINHARD, J., concurs.

JUSTICE WOODWARD, specially concurring:

I agree with the majority that the facts in this case invoke the "substantial harm" exception to the general rule that disclosure of a client's name is not protected by the attorney-client privilege. Under the facts of this case, the attorney-client privilege has been waived. Succinctly, John Doe waived the attorney-client privilege of his own accord and with the consent and approval of attorney Fawell when he accompanied Fawell to the sheriff's office where Fawell attempted to file the required report.

Fawell stated that his client, John Doe, accompanied him to the sheriff's office, which was a public building, and the route to get to the building was exposed to the view of anyone present. Fawell stated that his client was standing in the general vicinity of where he was standing when he attempted to give the report to deputy sheriff Paine. Fawell stated that he *did indicate* to Paine that his client was with him by a gesture of his hand. Fawell described the window that Paine was behind when he attempted to submit the report. It was similar to a walk-up bank window with thick glass and a U-shaped opening under the window.

In his argument to this court, Fawell draws a distinction between acts that are "compelled" and those that are "voluntary." Although the majority rejected this argument, I agree with Fawell that since the making of the report was required by section 11—401(b), it was "compelled" testimony and, therefore, did not waive the attorney-client privilege. (See *New Jersey v. Portash* (1979), 440 U.S. 450, 59 L. Ed. 2d 501, 99 S. Ct. 1292; *Simpson v. Braider* (D.D.C. 1985), 104 F.R.D. 512.) However, nothing "compelled" John Doe to accompany Fawell to the sheriff's office, a public building, to make the report.

The purpose behind section 11—401(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(b)) is to obtain information. Nothing in the language of that statute prohibits a third party, such as an attorney, from making the report on behalf of a client. Indeed, that is exactly what Fawell was attempting to do when he began to read the statement to Deputy Paine. By so doing, Fawell acknowledged that his client's presence at the sheriff's office was unnecessary and hence not "compelled" but "voluntary." The fact that Deputy Paine did not see John Doe is irrelevant since Fawell testified that John Doe accompanied him to the sheriff's office; therefore, there was no intent by Fawell or John Doe not to disclose John Doe's identity. Thus, although the making of the report was required by the statute and, therefore, "compelled," John Doe's presence at the sheriff's office was voluntary and with his attorney's consent. These facts waive the attorney-client privilege.