*In re* MARRIAGE OF KATHRYN M. LA RENO, Petitioner-Appellee, and RICHARD R. LA RENO, Respondent-Appellant.

First District (2nd Division) No. 82—440

Opinion filed March 29, 1983.

James A. Palmisano, of Chicago, for appellant.

Paul E. Peldyak and Edward G. Krantz, both of Chicago, for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Kathryn and Richard La Reno (Kathryn and Richard) were divorced on May 10, 1976. On August 27, 1980, Kathryn filed a post-decree petition requesting that the written divorce decree be amended to require Richard to pay the real estate taxes on her residence. The trial court, on February 18, 1982, granted her petition. Richard appeals and contends that the court lacked jurisdiction to order him to pay the real estate taxes on Kathryn's residence and, in the alternative, that the court erred in holding that he was obliged to pay those taxes.

Richard and Kathryn were married on April 3, 1948. Their marriage produced four children, two of whom were minors at the time the marriage was dissolved. Kathryn separated from Richard in 1974 and thereafter sued for divorce on grounds of mental cruelty. At the time of the dissolution proceedings, Kathryn was unemployed and had been hospitalized for approximately two to three months in 1975. She had also required other medical and psychological treatment because she had been experiencing headaches, nervousness and vomiting allegedly as a result of Richard's conduct towards her. Richard worked for Arthur Rubloff & Company at the time the marriage was dissolved.

Richard and Kathryn reached an oral property settlement which was never reduced to writing. Instead, at the "prove-up" on April 13, 1976, Kathryn testified to the terms of their oral agreement. She stated that Richard had agreed to pay the real estate taxes on the residence he was to purchase for her. After Kathryn testified, Richard testified that he had discussed the oral agreement with his attorney, understood the agreement, entered into it voluntarily and intended to be bound by its terms. Following Richard's testimony, Judge Bernard Wolfe held that the marriage would be dissolved. He also stated: "The Court incorporates *** the provisions of the oral agreement in the Decree, to be submitted to the Court. Both counsel approve the decree. Gentlemen, I would suggest that both parties approve the Decree in its final form and file a transcript ***."

After the prove-up on April 13, 1976, and before the decree was submitted to the court on May 4, Richard dismissed his attorney for failing to act in Richard's best interests. In a letter to his attorney, Richard claimed that at the prove-up he had wanted to object to Kathryn's testimony that he was required to obtain life insurance on

his life naming Kathryn as his beneficiary. Since Richard's attorney told him to "be quiet," Richard assumed that the attorney would clarify all uncertainties when Kathryn finished testifying. The attorney, however, remained silent. Richard's letter did not dispute Kathryn's testimony regarding the payment of real estate taxes.

On May 4, 1976, Kathryn's attorney submitted the proposed written divorce decree to the court. Judge Wolfe, however, delayed approval of the decree until he could review it and determine whether it accurately set forth the parties' agreement. Paragraph 11 of the proposed decree required Richard to purchase a residence for Kathryn in a location of her choice; his liability for the residence was not to exceed $87,500 including a down payment of not less than $30,000. Paragraph 11 stated further:

"*** [Richard] has the option of financing the balance of the purchase price with the payment of any mortgage principal and interest to be his sole responsibility. [Richard] shall pay to [Kathryn] each month when said mortgage installment shall be due, an amount equal to the current installment of the mortgage principal and interest which sum shall be paid by [Kathryn] to the Mortgagee. [Kathryn] will be entitled to claim any interest paid on said mortgage on her personal Income Tax Returns. [Kathryn] will pay any real estate taxes, assessments and maintenance costs in connection with the said residential real estate and shall be entitled to the appropriate income tax deductions in connection therewith ***."

Title to the residence would be held in a land trust with Kathryn as beneficiary. Upon her death, the La Reno children would become the beneficiaries of the trust.

On May 10, 1976, Judge Wolfe stated that he had compared the decree with the record, exhibits and his own notes. He commented that the decree "substantially" conformed to the record and to the parties' agreement and approved it. Neither Kathryn nor Richard sought to clarify the language of paragraph 11 as to which of them was responsible for furnishing the funds to pay the real estate taxes. Richard, proceeding *pro se*, objected to entry of the decree on the ground that it did not accurately reflect the parties' agreement, but he did not indicate in what respect the decree was erroneous. The court held that Richard was bound by Kathryn's testimony because Richard had previously testified that he heard her testimony, understood the terms of their agreement and intended to be bound by those terms.

On June 9, 1976, Richard filed a motion to vacate the May 10,

1976, divorce decree on the ground that he had not consented to the property settlement agreement. This motion was heard by Judge David Linn. On June 14, 1976, Judge Linn entered a "Supplement to Judgment for Divorce" in which Richard was allowed to withdraw his motion to vacate. In addition, Richard was required to pay Kathryn's attorney fees; to pay Kathryn $10,000 in a lump sum as additional alimony; and to pay Kathryn all other sums due to her under the terms of the May 10, 1976, divorce decree.

Four years later, on August 27, 1980, Kathryn filed an "emergency petition" in which she alleged that under the oral agreement to which she testified on April 13, 1976, Richard was required to provide her with the funds to pay the real estate taxes on her residence. Kathryn also alleged that the property settlement agreement was to be included in the divorce judgment. Although the decree appears to require Kathryn to pay the real estate taxes with her own funds, Kathryn alleged that the decree was in error and requested the court to correct the May 10, 1976, decree to conform to the court's intended judgment. The petition also requested the court to order Richard to reimburse Kathryn for the real estate taxes she paid from 1976 through 1979. On July 14, 1981, Judge Charles Fleck held that under the terms of their oral agreement Richard was obliged to pay Kathryn's real estate taxes.

On August 12, 1981, at Richard's request, Judge Fleck vacated his order of July 14, 1981, to hear additional evidence on whether Richard was required to pay the real estate taxes. On December 29, 1981, an evidentiary hearing was held at which Richard testified that he never paid the real estate taxes on Kathryn's residence because it was his understanding that Kathryn had the sole responsibility of paying those taxes. Richard also testified that the June 14, 1976, supplemental order entered by Judge Linn was based on a second oral agreement which he had negotiated with Kathryn after the original divorce decree was entered and that this second agreement did not require him to pay the real estate taxes on her residence. Richard then called Kathryn as an adverse witness. Kathryn admitted that she had paid from her own funds the real estate taxes for 1976, 1977 and 1978 but could not recall whether she had paid the taxes for 1979. She also admitted that she first made a demand on Richard to pay the real estate taxes when she filed her emergency petition on August 27, 1980. Kathryn testified that a signature on the "Supplement to Judgment for Divorce" resembled her signature but she did not recall the document or recall signing it.

Testifying in her own behalf at the December 29, 1981, eviden-

tiary hearing, Kathryn stated that it was her understanding that Richard would provide her with the necessary funds to pay the real estate taxes. Kathryn also testified that she had asked the Glenview State Bank, the trustee of the land trust holding title to her residence, to pay the taxes and had inquired why there was no escrow account for payment of those taxes. Richard was a director of the bank. On February 18, 1982, Judge Fleck entered an order holding Richard responsible for providing Kathryn with the funds necessary to pay the real estate taxes on her residence and requiring Richard to reimburse her for the prior real estate taxes paid by her.

On appeal, Richard cites the rule that property rights created in a divorce decree become vested after 30 days and that the trial court lacks jurisdiction thereafter to modify those rights. (*In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 956, 407 N.E.2d 746.) Since the property rights created in the divorce decree entered on May 10, 1976, vested before Kathryn filed her emergency petition on August 27, 1980, Richard contends that the trial court did not have jurisdiction to order him to pay the real estate taxes. We cannot agree.

■ A trial court has authority to enter a *nunc pro tunc* order to conform a written record of the judgment to the judgment in fact rendered by the court. (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 809, 263 N.E.2d 708.) The correction must be based on some note, memorandum, or memorial paper remaining in the file or upon the records of the court; it cannot be based on the recollection of the trial judge or other persons. Moreover, this power is limited to entering into the record something which was actually done; the alleged error sought to be corrected must be clerical and not judicial. (*In re Marriage of Gingras* (1980), 86 Ill. App. 3d 14, 16, 407 N.E.2d 788.) The distinction between clerical error and judicial error depends not so much upon the source of the error but upon whether it was the deliberate result of judicial reasoning and determination. (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 810.) In *Neumann v. Neumann* (1978), 58 Ill. App. 3d 211, 373 N.E.2d 57, not cited by either party, there was a discrepancy between the property settlement agreement and the divorce decree as entered, although the trial court intended to incorporate the agreement into the judgment. The appellate court held that the discrepancy was not a judicial error and concluded that the trial court had jurisdiction to correct the decree so that it would accurately reflect the judgment rendered by the trial court. 58 Ill. App. 3d 211, 214.

■ In the instant case, at the conclusion of the prove-up on April 13, 1976, Judge Wolfe stated: "The Court incorporates, gentlemen,

the provisions of the oral agreement in the Decree, to be submitted to the Court." Thereafter, the judge indicated that the written judgment was to reflect the testimony received at the prove-up. Since it appears that Judge Wolfe intended to incorporate the parties' oral property settlement agreement into his written judgment, we conclude that Judge Fleck had jurisdiction to correct any variance he found between that agreement and the decree.

The next issue in this case is whether there was in fact a variance between the parties' oral property settlement agreement and the May 10, 1976, divorce decree. The divorce decree apparently requires Kathryn to pay the real estate taxes on her residence from her own funds. At the prove-up on April 13, 1976, Kathryn's attorney asked her the following question:

"Kathryn's attorney: *** In terms of the payment on -- for this real estate, Mr. La Reno will make the payments to you as part of a property settlement agreement, you will then -- The payments that he makes will be an amount equal to the mortgage and taxes. You will make those payments then to the mortgagee and to the tax people and you will be entitled to a deduction for the interest and the real estate taxes. However, you will be liable for the payment of the real estate taxes for any assessments and for the maintenance of this property.
Kathryn: Yes."

Following Kathryn's testimony, Richard testified that he had agreed to the terms to which Kathryn had testified. Richard now contends that the question asked of Kathryn regarding the payment of real estate taxes was ambiguous. Kathryn, however, asserts that her testimony clearly placed on Richard the responsibility of providing funds for payment of the real estate taxes and that she is responsible only for any tax assessments and maintenance costs.

■ Language is ambiguous if its meaning is susceptible of being interpreted in more than one sense. The simple failure, however, of the parties to agree on the meaning of the terms does not render language ambiguous. (*In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 956, 407 N.E.2d 746.) The meaning of the question posed to Kathryn by her attorney regarding the ultimate source of funds to pay the real estate taxes appears clear. Kathryn is responsible for paying from her own funds only the maintenance costs and any assessments. Both Richard and Kathryn share responsibility in the payment of the mortgage and the real estate taxes: Richard must provide the funds necessary for the payment of the mortgage and the real estate taxes; Kathryn, in turn, is responsible for actually transmitting

payment of those funds to the mortgagee and the tax authorities. Thus, as to third persons, although Kathryn may be legally liable for the payments, she has a right to look to Richard for the necessary funds.

After the evidentiary hearing, Judge Fleck found that Richard had indeed agreed to pay the real estate taxes on Kathryn's residence. Richard contends that Judge Fleck erred in this finding because he allegedly focused only upon Kathryn's testimony at the prove-up of April 13, 1976, and the May 10, 1976, divorce decree. Richard argues that had Judge Fleck considered the entire record, the evidence would have clearly indicated that the parties intended for Kathryn to pay the real estate taxes from her own funds. We have reviewed the record of the evidentiary hearing and conclude that the court's judgment finding Richard liable to Kathryn for payment of the real estate taxes was not contrary to the manifest weight of the evidence. (*Arakie v. Hatoff* (1972), 5 Ill. App. 3d 1073, 1076, 284 N.E.2d 703.) In our judgment, the trial court did not err when it conformed the divorce decree to the parties' oral property settlement agreement.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.