FIRST MIDWEST BANK/DANVILLE, Plaintiff-Appellee, v. CINDY J. HOAGLAND, Defendant (John Blakeney, Defendant-Appellant).

Fourth District   No. 4—92—0733

Opinion filed April 22, 1993.—Rehearing denied June 7, 1993.

John Roska (argued), of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellant.

William Garrison and Jeanette E. Bahnke (argued), both of Saikley, Garrison & Colombo, Ltd., of Danville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant John Blakeney appeals from an order of the circuit court of Vermilion County holding him in indirect civil contempt of court for his failure to obey a court order requiring him to submit copies of his 1991 income tax returns to First Midwest Bank, and prohibiting him from disposing of his 1991 income tax refund. Defendant appeals, alleging various allegations of error regarding notice, propriety of a contempt finding based upon an oral order, propriety of the finding of indirect civil contempt in the case, and propriety of the sanction imposed. We agree with the defendant and reverse.

On August 24, 1990, Blakeney and his wife, Cindy Hoagland, obtained an automobile loan from plaintiff First Midwest Bank in the amount of $1,118.43. Blakeney and Hoagland signed a promissory note obligating them to make monthly payments. Blakeney and Hoagland defaulted on the note, and on August 22, 1991, plaintiff filed a small claims action against them, requesting a judgment of $803.54, plus costs and attorney fees. Both Blakeney and Hoagland were served by abode service on September 11, 1991, with a summons instructing them to appear in court on September 16, 1991. The docket entry sheets indicate Hoagland appeared in court *pro se* on September 16, 1991, and agreed to a judgment against her in the amount of $803.54, plus costs and either $126 or $140 temporary attorney fees. (There are two docket entries for September 16, 1991.

They are identical with respect to the amount claimed and costs, but one provides for a judgment for temporary attorney fees in the amount of $126, and the other provides for a judgment for temporary attorney fees in the amount of $140.) Although Hoagland is mentioned by name in the docket entries, no mention is made of Blakeney, and no judgment was recorded against Blakeney. There was no written order of judgment entered. At oral argument, Blakeney "conceded" a judgment had been entered against him, but that "concession" does not ameliorate our concern about this trial court record.

Although the record does not reflect judgment had been entered against Blakeney, on September 27, 1991, plaintiff caused the clerk of the court to issue a citation to discover assets directing Blakeney to appear in court on October 21, 1991, to be examined under oath regarding his income and assets. Blakeney was instructed to bring copies of his Federal and State income tax returns for the years 1988, 1989, and 1990.

Blakeney appeared in court *pro se* pursuant to the citation on October 21, 1991. By agreement of the parties, the matter was continued for a status check until November 4, 1991. On November 4, 1991, Blakeney again appeared *pro se*. According to a *nunc pro tunc* docket entry, the court orally ordered Blakeney to (1) pay $25 per month to the plaintiff beginning in December 1991, (2) notify plaintiff's attorney of any change in address or employment, (3) provide plaintiff's attorney with copies of his 1991 income tax returns within five days of filing them, (4) not dispose of or agree to dispose of his income tax refund without permission of the court or agreement of the plaintiff, and (5) furnish copies of all future tax returns, until the judgment had been paid in full. This order was not reduced to writing and was not reflected in the docket entry made on November 4, 1991.

On April 23, 1992, plaintiff filed a petition for a rule to show cause, which was scheduled to be heard by the court on May 4, 1992. The petition for the rule to show cause alleged Blakeney had failed to comply with the court's order of October 21, 1991, which plaintiff alleged required Blakeney to furnish it with copies of his 1991 tax returns within five days of filing. Blakeney did not appear at the hearing on the petition for the rule to show cause. The court issued a rule to show cause, requiring Blakeney to appear and show cause as to why he should not be held in contempt of court for his failure to appear in court on plaintiff's petition for a rule to show cause. Plaintiff mailed a copy of the rule to Blakeney.

Blakeney appeared *pro se*, pursuant to the rule to show cause, on May 18, 1992. Blakeney testified he had not provided plaintiff with

copies of his tax returns and had used his tax refund of approximately $800 to pay bills. The matter was continued to June 8, 1992, for a status check. Blakeney was ordered to appear on the status date and bring with him copies of his tax returns and a list of bills he paid with his tax refund. The record does not reflect that defendant was admonished that he could be held in contempt of court due to spending his tax refund or for any other reason. The only written order entered simply stated the matter was continued for a status check.

On June 8, 1992, Blakeney appeared *pro se*. Blakeney brought copies of his tax returns to court with him and testified he paid $200 of his tax return to his landlord and $600 to his mother. The court continued the matter to June 15, 1992. Again, the record does not reflect that defendant was admonished that he could be held in contempt of court for spending his tax refund or for any other reason. The only written order entered provided the matter was continued for a status check.

On June 15, 1992, Blakeney appeared *pro se*. Blakeney testified he had made only one of the $25 monthly payments which he was to have made to plaintiff under the November 4, 1991, order. Blakeney was offered an opportunity to explain why he had not made more of the monthly payments. Blakeney stated he was unemployed and was receiving unemployment benefits. The court found defendant to be in contempt of court for his deliberate and willful failure to provide copies of his tax returns to plaintiff, and for disposing of his tax refund. The court ordered Blakeney to serve 30 days' incarceration, staying the enforcement of the order for 60 days and setting a status hearing for August 17, 1992. The court provided Blakeney could avoid the incarceration if he paid $600 on or before August 17, 1992.

Blakeney obtained counsel through Land of Lincoln Legal Assistance. On July 27, 1992, the court approved a *pauperis* petition, exempting the defendant from payment of court costs due to indigency. On July 28, 1992, Blakeney, through his counsel, filed a motion to vacate the finding of contempt. The motion stated there was no record of a court order limiting Blakeney's ability to dispose of his tax refund. Blakeney, in an affidavit in support of the motion, stated that prior to June 15, 1992, he was unaware of any court order limiting his ability to dispose of his tax refund. Blakeney's motion to vacate was heard on September 4, 1992.

At the commencement of the hearing the court stated that although the docket entries did not reflect the entry of an order, on November 4, 1991, limiting Blakeney's ability to dispose of his tax refund, the court had retrieved its personal handwritten notes of the

November 4, 1991, hearing. The court stated its notes reflected Blakeney had been ordered to notify plaintiff's attorney of any change in address or employment, to provide plaintiff with copies of his tax returns within five days of filing them, not to dispose of or agree to dispose of his 1991 tax refund without the permission of the plaintiff or order of the court, and to furnish copies of his tax returns in the future until the judgment was paid in full. The court stated the failure of the clerk to record this order in a docket entry was probably the result of there being 168 separate cases on the court's docket that day.

The court ordered the clerk to correct the docket entry in the court file for November 4, 1991, to reflect the order regarding Blakeney's tax refund. The court noted Blakeney testified on June 15, 1992, that he had received a tax refund of approximately $800, and had spent it without the permission of the plaintiff or order of the court. The court then asked Blakeney's attorney if he wished to withdraw the motion to vacate the order of contempt because the motion was partially based on an incomplete docket entry. The defense proceeded with the motion. The court denied the motion and, despite the defense's requests, refused to make a finding on whether Blakeney had the financial ability to pay the purge amount which had been set at $600. The court ordered the mittimus for Blakeney's confinement to issue immediately. The defense requested enforcement of the order be stayed so Blakeney could consider an appeal. The motion was initially denied; however, the court later stayed the enforcement of the order.

After the September 4, 1992, hearing, pursuant to the court's order to correct the docket entry of November 4, 1991, the clerk of the court generated a "revised computer printout" of docket entries. On the revised computer printout of docket entries, the entries reflected Blakeney had been ordered on October 21, 1991, and November 4, 1991, not to dispose of his tax refund. The original docket sheets—containing all of the docket entries originally made in the matter—were removed from the file and replaced by the computer printout of "revised" docket entries, containing the "corrected" version of events.

At further hearing on September 9, 1992, the court reviewed the "revised docket entries," and found they were still incomplete and inadequate. The court ordered the revised docket entry of October 21, 1991, to be corrected by deleting reference to the tax refund, finding that Blakeney had not been ordered not to dispose of his tax refund on October 21, 1991. The court additionally ordered the revised

docket entry of November 4, 1991, to be further revised to read as follows:

> "By his agreement, the defendant JOHN BLAKENEY, was ordered and directed to pay $25.00 per month beginning December 7, 1991. Defendant was further ordered and directed to notify William Garrison[,] attorney for the plaintiff, within five days of any change in address or upon obtaining or resuming any employment different from that which he held on November 4, 1991. He was further ordered and directed to furnish William Garrison, attorney for the Plaintiff, copies of his 1991 federal and state income tax returns within five days of filing and not to dispose or agree to dispose of any refund shown to be due thereon without agreement of the Plaintiff or order of Court, and further was ordered and directed to furnish copies of his subsequent federal and state income tax returns until the judgment was paid in full."

On appeal, Blakeney alleges the finding of contempt in this case was improper, the sanction imposed was improper, and notice did not comport with due process. We agree. We initially address the propriety of the *nunc pro tunc* orders.

## I. THE *NUNC PRO TUNC* ORDERS

■ The *nunc pro tunc* orders of September 4 and 9, 1992, changing the docket entries of October 21, 1991, and November 4, 1991, have two major shortcomings. First, the *nunc pro tunc* orders were improper as they were not based upon a note, memorandum, or memorial *present* in the court record. Second, the manner in which the *nunc pro tunc* orders were recorded was improper as it resulted in the *destruction of a portion of the record,* and the insertion of a revised record, without providing any explanation that the record had been revised and the substance of the revisions.

On September 4, 1992, nearly three months after the court had held Blakeney in contempt of court and 10 months after the November 4, 1991, oral order which Blakeney allegedly violated, giving rise to the contempt charge, the court realized the clerk had not entered a docket entry on November 4, 1991, reflecting an order regarding the disposition of Blakeney's tax refund. Nor was there a written order entered on November 4, 1991. The court, based upon its notes of the November 4, 1991, hearing, which were not part of the court record, ordered the docket entries to be changed to reflect an order of the court purportedly entered on November 4, 1991, prohibiting Blakeney from disposing of his 1991 tax refund.

A court has the power to enter a *nunc pro tunc* order to correct an order so that it conforms with the order of the court. (*In re Marriage of La Reno* (1983), 113 Ill. App. 3d 755, 759, 447 N.E.2d 949, 953.) The function of a *nunc pro tunc* order is to speak now for what was actually done then. (*People v. Denny* (1992), 238 Ill. App. 3d 819, 822.) The *nunc pro tunc* order must be based upon evidence such as a note, memorandum, or memorial paper *remaining* in the files or upon the records of the court. (*Beck v. Stepp* (1991), 144 Ill. 2d 232, 238-39, 579 N.E.2d 824, 827.) The memorandum must be made at the time of the proceeding it references. (*Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 752, 436 N.E.2d 276, 280-81.) Neither the letter which plaintiff claims to have sent to Blakeney on January 8, 1992 (and which was filed with the court sometime on or between June 15, 1992, and July 18, 1992), nor the notes of the trial court (which have not been incorporated into the court record), satisfy this requirement.

Plaintiff claims to have sent Blakeney a letter on January 8, 1992, which makes reference to an order entered on October 21, 1991, requiring Blakeney to furnish it with copies of his tax returns within five days of filing and to refrain from disposing of his tax refund without its agreement or order of the court. Incidentally, according to the bystander's report (134 Ill. 2d R. 323(c)), no such order was entered on October 21, 1991, as alleged by plaintiff in its letter to Blakeney; rather, the oral order was made on November 4, 1991. As there was no reference in the original docket entries of either October 21, 1991, or November 4, 1991, and plaintiff neglected to prepare a written order for entry by the court on either of those dates, plaintiff's confusion regarding *when* the order was made, just as the defendant's confusion regarding *whether* such order was ever made, is understandable.

Plaintiff's letter cannot be a basis for the *nunc pro tunc* order because it was not written at the time of the proceeding which it references, and it was not filed with the court until months after the October 21, 1991, and November 4, 1991, docket entries were made. The judge must have a definite and certain record as a basis for a *nunc pro tunc* order. The basis must be found within the record of the court and without reliance upon the recollection of the trial judge or affidavits. (*Frank*, 106 Ill. App. 3d at 752, 436 N.E.2d at 280; *O'Dell v. Dowd* (1981), 102 Ill. App. 3d 189, 191, 429 N.E.2d 548, 551.) Plaintiff's letter of January 8, 1992, was not filed with the court until the summer of 1992. Although it does not bear a file stamp, its location in the file suggests it was filed after an order bearing a file

stamp dated of June 15, 1992, and before an order bearing a file stamp dated July 28, 1992. Thus, the letter was presumably filed on or between June 15, 1992, and July 28, 1992. Assuming *arguendo* that a letter written by plaintiff to defendant, referencing a court order, could constitute a note, memorandum, or memorial paper upon which a *nunc pro tunc* order could be based, the *nunc pro tunc* order cannot be entered based upon the letter in this case because it was not a memorandum *remaining* in the file of the court; rather, it was a memorandum which was first filed with the court eight to nine months after the October 21, 1991, oral order which it references by date, and seven to eight months after the oral order of November 4, 1991, in which the order referred to was—according to the trial judge's later revised entries—actually made. Moreover, the letter cannot be the proper basis for a *nunc pro tunc* order because it was not made *at the time of the proceeding which it references*; rather, it was made three months after the October 21, 1991, proceeding and two months after the November 4, 1991, proceeding.

Likewise, the judge's notes which are not kept in the court record cannot be the basis for the entry of a *nunc pro tunc* order. As the appellate court stated in *Gardner v. People* (1902), 100 Ill. App. 254, 258, "[t]he record that imparts absolute verity, and upon which all who look may rely, does not reside 'unwritten and unspoken in the breast of the judge.' Nor does it exist in memoranda kept by the court." Although not precedential (compare Ill. Rev. Stat. 1877, ch. 37, par. 34, with Ill. Rev. Stat. 1935, ch. 37, par. 49 (as amended by approval of H.B. 62 Apr. 25, 1935 (1935 Ill. Laws 696)); see also, *e.g., People ex rel. Nelson v. Sherrard State Bank* (1930), 258 Ill. App. 168, 178), we find *Gardner* persuasive.

Thus, as there was no basis in the record upon which the *nunc pro tunc* orders of September 4, 1992, and September 9, 1992, could be based, these orders were improper.

We additionally caution the circuit court against future use of the procedure followed in this case for entry of *nunc pro tunc* orders. Once a written order or docket entry becomes part of the court record, it cannot be removed from the court record. An order or docket entry may be corrected by a *nunc pro tunc* order, but *this does not involve the destruction of the original record, substitution of a revised record, and presentation of the revised record* as if matters had been originally recorded in the revised form.

A *nunc pro tunc* order speaks *now* for what was actually done *then*. A *nunc pro tunc* order is a correcting order. Both the original order and the *nunc pro tunc* order should be present in the court rec-

ord. The original order should remain intact. The *nunc pro tunc* order should bear the date it was made, reference the original order and state what is to be deleted, added, or changed. If the *nunc pro tunc* order provides the original order is to be altered on its face, such alterations to the original order may be made—*on the original*, with markings noted upon its face; however, the *nunc pro tunc* order, specifically setting forth the deletions, additions or changes, must remain in the court record. In this way, the court record will accurately reflect the order that was originally entered, and the date, existence, and effect of the *nunc pro tunc* order.

The *nunc pro tunc* orders were improper, both in substance and in form. We additionally note the *nunc pro tunc* orders were not made until *after* Blakeney had allegedly violated the oral orders of the court, and *after* he had been held in contempt of court for such violations. Thus, at the time Blakeney was held in contempt of court, there was no trace in the record of the order he had allegedly violated, and Blakeney consistently maintained he never understood such order to have been made.

Courts must use extreme caution in holding an individual in indirect civil contempt of court based upon the violation of a court order not found in the court record. Holding an individual in contempt of court is a drastic remedy, especially where the sanction involves incarceration of the alleged contemnor. Under some circumstances, an individual may be held in indirect civil contempt of court for violation of an oral court order. See *People v. Kennedy* (1963), 43 Ill. App. 2d 299, 302, 193 N.E.2d 464, 466.

In *Kennedy*, the defendant was orally admonished by the court that he would be held in contempt of court if he molested or threatened his stepdaughter. A month later, defendant struck his stepdaughter, called her vile names, and threatened her. (*Kennedy*, 43 Ill. App. 2d at 301, 193 N.E.2d at 465.) A rule to show cause was entered, requiring defendant to show cause as to why he should not be held in contempt of court. At the hearing on the rule, the defendant testified he had perfectly understood the order of the court, and knew he would be held in contempt of court if he violated it; however, the defendant argued the order of the court should not be binding upon him, as it was an oral order which was not reduced to writing. Affirming the finding of contempt, the appellate court noted that the disobedience of an oral order of the court may be punished for contempt. The court stated:

> "If we were to adopt the rule as urged by the defendant, every admonition and ruling made by a trial court during the

course of a proceeding would be meaningless and unenforceable. Persons who hear or are apprised of oral decisions and violate their provisions are liable to contempt proceedings." *Kennedy*, 43 Ill. App. 2d at 302, 193 N.E.2d at 466.

In *Kennedy*, the appellate court was concerned with the ability of an individual to avoid compliance with a court order, even though he had understood the court order, because the order had not been reduced to writing. We agree that where an individual acknowledges understanding a court order, and disobedience of it, the individual may not escape punishment for contempt merely because the order was not reduced to writing. However, the present case is distinguishable from *Kennedy*. Blakeney, unlike Kennedy, did not testify, in open court, that he understood the order of the court and knew he could or would be held in contempt for violating it but violated it anyway. On the contrary, Blakeney testified he did not understand the order of the court and was unaware, until the initiation of the contempt proceedings, of the order of the court of which he was alleged to be in contempt.

While recognizing the possibility a litigant may be held in contempt of an oral order, courts have repeatedly acknowledged the inherent perils of holding a person in contempt for the violation of an order which does not appear in the record of the court. In *Bank of Hamilton v. Lessee of Dudley* (1829), 27 U.S. (2 Pet.) 492, 522, 7 L. Ed. 496, 506, the Supreme Court stated:

> "That a Court of record, whose proceedings can be proved by the record alone, should, at a subsequent term, determine that an order was made at a previous term, of which no trace could be found on its records *** is a proceeding of so much delicacy and danger, which is liable to so much abuse; that some of us question the existence of the power."

Similarly in *Dines v. People* (1891), 39 Ill. App. 565, the court noted that better practice indicates orders, the disobedience of which could form a basis for contempt, should be of record. Specifically, the court stated:

> "Mere verbal orders may be given by the judge, which are never placed upon record, and for the disobedience of which one might be punished as for contempt. But all such orders and proceedings could properly be placed upon the record of the court, if necessary, and usually would be, if proceedings in the nature of punishing for contempt were to grow out of them." (*Dines*, 39 Ill. App. at 569.)

Again, although not precedential by statute as preceding the 1935 amendment, we find *Dines* persuasive.

We conclude a court must use extreme caution in holding a person in indirect civil contempt of court for the disobedience of an order of which there exists no record, and of which the alleged contemnor consistently denies knowledge.

Plaintiff alleges the effect of Blakeney's argument is to require the court to reduce all orders to writing. We do not come to such a broad conclusion. However, where an unsophisticated and uneducated litigant is orally ordered to do and refrain from doing a list of activities spanning a lengthy period of time, better practice would be to provide the litigant with a written order, so the litigant has written confirmation and clarification of what he has been ordered to do and not to do, and at what time he must do or refrain from doing the listed activities.

Plaintiff alleges it is an impossible burden to require the court to reduce its order to writing. It takes but a few minutes for the court to enter an order memorializing its decision. We have additionally stated that it takes only moments to directly elicit from a party a response indicating that he understands the proceedings or the court's oral orders, and incorporate such into the record. (*Abbott v. Abbott* (1970), 129 Ill. App. 2d 96, 99, 262 N.E.2d 502, 504.) Moreover, the present predicament could have been avoided had plaintiff drafted an order, and presented it to the court for entry.

Many circuits have reduced the burden on the court by enacting a local rule requiring the prevailing party to draft a proposed order, which is then reviewed by the court and entered if appropriate. In the present case, an applicable local rule provided:

> "(A) Presentation of Drafts: When the court rules upon a motion other than in the course of a trial or makes a final determination in an action, the attorney for the prevailing party shall prepare and present to the court the order, judgment or decree to be entered, unless otherwise directed by the court." (5th Jud. Cir. R. XI (1990).)

In his brief, Blakeney argues this rule required plaintiff to submit a written order regarding the instructions to Blakeney at the citation hearing. Blakeney argues plaintiff's failure to comply with this rule should prevent it from enforcing the oral order through contempt proceedings. We need not determine if the order entered at the citation hearing was made upon plaintiff's motion. However, the party for whose benefit the order is entered ought to prepare a draft order for submission to the court. Blakeney was required to appear in court

pursuant to the citation to discover assets issued at the plaintiff's behest. Blakeney appeared in court and was ordered to do or refrain from doing a variety of actions, all for the benefit of plaintiff. Had the plaintiff transcribed the list of requirements, and incorporated them into a court order, which could then have been signed by the court and a copy provided to Blakeney, this situation would have been avoided.

## II. NOTICE

■ Blakeney did not receive notice of the contempt proceedings comporting with due process. In proceedings to punish indirect civil contempt of court, due process requires notice or a rule to show cause be served upon the alleged contemnor. This formal written notice must inform the alleged contemnor of the charges against him. (See *In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 94, 507 N.E.2d 912, 918 (*Betts I*).) The notice must contain an adequate description of the facts upon which the contempt charge is based and inform the alleged contemnor of the time and place of the evidentiary hearing on the charge, within a reasonable time in advance of the hearing. (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 53, 558 N.E.2d 404, 422 (hereinafter *Betts II*).) Blakeney was held in contempt of court for his failure to provide plaintiff with copies of his tax returns within five days of filing, and disposal of his tax refund. Blakeney received some notice of the first charge, but never received notice the court would determine whether he should be held in contempt of court for disposing of his tax refund.

Plaintiff alleges Blakeney received proper notice of the contempt proceedings under four theories. First, plaintiff alleges Blakeney received oral notice of the charges against him. This statement is not supported by the record; however, even if Blakeney had received oral notice, oral notice is inadequate. Defendant must receive formal *written* notice of the charges against him. See *Betts I*, 155 Ill. App. 3d at 94, 507 N.E.2d at 918.

Second, the plaintiff alleges the petition for the rule to show cause and the rule to show cause provided Blakeney with written notice of the charges against him. The petition for the rule to show cause notified Blakeney that plaintiff alleged Blakeney should be held in contempt of court for failing to provide plaintiff with copies of his income tax returns within five days of filing. The rule to show cause required Blakeney to appear in court and show cause why he should not be held in contempt of court for his failure to appear for the hearing on plaintiff's petition for a rule to show cause.

Incidentally, we note Blakeney could not have been held in contempt of court for failing to appear for the hearing on plaintiff's petition for a rule to show cause. An individual may be held in contempt of court for failure to appear in court when ordered to do so by the court. The supreme court has additionally provided an individual may be held in contempt of court for failure to appear in court pursuant to a citation to discover assets. (134 Ill. 2d R. 277(h).) However, a movant litigant's notice that it will appear in court and request a rule to show cause is neither an order of the court nor a citation to discover assets. Thus, while the nonmoving litigant may appear if he so desires, he is not required to do so by the court and cannot be held in contempt of court for his failure to do so.

Blakeney did not receive proper written notice that a hearing would be held regarding whether he should be held in contempt of court for his failure to provide plaintiff with copies of his tax returns. Ideally, a defendant should receive both the petition for the rule to show cause and the rule to show cause. Where a rule to show cause and petition for a rule to show cause set forth substantially the same allegations, the service of the rule to show cause, setting forth the nature of the charges against him and the time and place of the hearing on those charges, satisfies the due process notice requirements. (*Betts I*, 155 Ill. App. 3d at 94-95, 507 N.E.2d at 919.) However, where the petition sets forth one charge against defendant and the rule to show cause requires defendant to appear at a certain time and place and show cause as to why he should not be held in contempt of court based upon an entirely different and unrelated charge, the charge mentioned in the petition has been abandoned, and defendant has not received proper notice that a hearing will be held on whether he should not be held in contempt of court on the basis of that charge. Moreover, neither the petition nor the rule to show cause can be construed in any way to provide Blakeney with formal written notice the court would determine whether he should be held in contempt of court based upon disposing of his tax refund.

Third, plaintiff alleges that by appearing in person and testifying, Blakeney waived formal written notice. An alleged contemnor may waive formal written notice by voluntarily appearing in court and defending against the charge. (*Betts II*, 200 Ill. App. 3d at 53, 558 N.E.2d at 422.) However, in the present case, Blakeney did not appear voluntarily and defend against the charge that he should be held in contempt of court for his failure to provide plaintiff with copies of his tax returns, or because he disposed of his tax refund. Rather, he appeared in court, pursuant to a rule to show cause, which ordered

him to appear in court and show cause as to why he should not be held in contempt of court *for his failure to appear at the hearing on plaintiff's petition.* At the contempt hearing, Blakeney was given an opportunity to explain why he had not made more of the $25 monthly payments. Since Blakeney was never given notice that this was a charge against him, it is not clear why this matter was an issue in the contempt proceedings. There is no indication that Blakeney did anything other than answer the questions posed to him and state that he was unemployed. We do not believe appearing pursuant to a rule to show cause, setting forth a specific charge, and answering the questions posed by the court or opposing counsel, constitutes voluntarily appearing and defending against other charges of which Blakeney has not been given notice.

Finally, plaintiff alleges, "[u]ntil Defendant [Blakeney] appeared in open court on May 18 and testified as to the receipt and distribution of the tax refund, Plaintiff was unaware of these occurrences. As Defendant [Blakeney] himself appeared and testified as to these matters, no further notice was required. Due process was satisfied." Where a person is to be held in indirect civil contempt of court, notice, unless waived, is *always* required. Plaintiff appears to argue that since Blakeney appeared in court and testified to spending his tax refund, it may be punished as direct civil contempt of court, which requires no formal written notice to the alleged contemnor. Plaintiff cites *Cesena v. Du Page County* (1990), 201 Ill. App. 3d 96, 558 N.E.2d 1378, *rev'd* (1991), 145 Ill. 2d 32, 582 N.E.2d 177, in support of its position.

In *Cesena*, attorney Jeff Fawell was ordered by the court to divulge the identity of his client and the address of an accident in which the client was involved. (*Cesena*, 201 Ill. App. 3d at 102, 558 N.E.2d at 1382.) The court ordered Fawell to make the disclosure before 4:30 p.m. that day, and recessed until 9:30 a.m. the next morning for status. The next morning the court asked Fawell whether he had disclosed the information. Fawell, through his attorney, stated he had not *and would not* disclose the information. Fawell was held in contempt of court. Fawell appealed. The appellate court found there had been no violation of Fawell's due process rights, even though Fawell had not been provided with formal written notice of the charges against him. Specifically, the court stated, "this is an instance where the trial court properly summarily punished Fawell even though the contemptuous conduct occurred out of the court's presence, given that Fawell admitted in open court that he *would not comply* with the

court order." (Emphasis added.) *Cesena*, 201 Ill. App. 3d at 113, 558 N.E.2d at 1389.

■ Plaintiff is correct in its contention that direct civil contempt of court may be punished summarily, without written notice of the charges to the contemnor. However, Blakeney may not be punished for direct civil contempt of court in this case. Direct civil contempt of court requires that the alleged contemnor state he will not comply with the order of the court (see *Cesena*, 201 Ill. App. 3d at 113, 558 N.E.2d at 1389), or an unequivocal refusal to perform an affirmative act for the benefit of an opposing litigant, in open court, although directed to do so by the court (*Betts II*, 200 Ill. App. 3d at 52, 558 N.E.2d at 421). In the present case Blakeny did not testify he would not comply with an order of the court, nor was Blakeney ordered to perform an affirmative act, in open court, which Blakeney refused to do. Thus, Blakeney could not be held in direct civil contempt of court and plaintiff may not utilize this argument to obviate the fact Blakeney was never given notice, as required by due process, of the charges against him.

### III. INDIRECT CIVIL CONTEMPT OF COURT

■ The court additionally erred in finding Blakeney was in indirect civil contempt of court. In *Betts II* (200 Ill. App. 3d at 43, 558 N.E.2d at 415), we stated:

> "The primary determinant of whether contempt proceedings are civil or criminal in nature is the purpose for which contempt sanctions are imposed. If contempt sanctions are imposed for coercive purposes—to compel the contemnor to perform a particular act—the contempt is civil in nature. On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct."

Blakeney was purportedly ordered to provide plaintiff with copies of his tax returns within five days of filing and not dispose of his tax refund.

Holding Blakeney in contempt of court for failing to provide plaintiff with copies of his tax returns within five days of filing did not have the effect of *coercing* Blakeney to produce the tax returns, but rather to *punish* him for failing to produce the tax returns *within five days of filing*. Criminal sanctions are retrospective in nature; they seek to punish a contemnor for past acts which he cannot now undo. Civil sanctions are prospective in nature; they seek to coerce compliance at some point in the future. (*Betts II*, 200 Ill. App. 3d at 46, 558 N.E.2d at 417.) Blakeney did not provide plaintiff with copies of his

tax returns within five days of filing, but he did provide plaintiff with copies of the tax returns on June 8, 1992, prior to the contempt hearing. Thus, at the contempt hearing on June 15, 1992, the purpose of holding Blakeney in contempt of court was apparently not to coerce him to comply at some point in the future, but to punish him for failing to provide plaintiff with copies of the tax returns within five days of their filing.

Similarly, Blakeney could not properly be held in indirect civil contempt of court for disposing of his tax refund. Disposing of his tax refund was a past act which Blakeney could not undo. Accordingly, holding Blakeney in contempt of court for disposing of his tax refund had the effect of punishing him for doing something in the past. Since coercion is the goal of indirect civil contempt of court and punishment is the goal of criminal contempt of court, Blakeney could not properly be held in indirect civil contempt of court as a method of punishing him for past misconduct. As Blakeney correctly notes in his brief, the proper procedures for indirect criminal contempt of court were not followed in this case.

## IV. The Sanction

■ The court erred in the present case in holding Blakeney in indirect civil contempt of court and ordering him to serve 30 days' incarceration unless he paid $600. In *Betts II* (200 Ill. App. 3d at 56, 558 N.E.2d at 424) we stated, "[i]mprisonment for civil contempt is unique in that the contemnor may secure his immediate release from incarceration by either complying with the court order which he has refused to obey or demonstrating that he is unable to comply with that order." Since Blakeney had not disobeyed an order requiring him to pay $600, the court erred in ordering that Blakeney could only obviate imprisonment by paying $600. This does not permit Blakeney to secure his release by "complying with the court order which he has refused to obey." *Betts II*, 200 Ill. App. 3d at 56, 558 N.E.2d at 424.

Moreover, even if Blakeney had disobeyed an order requiring him to pay $600, the court's refusal to allow him the opportunity to demonstrate he was *unable* to pay $600 would have been in error. As we stated in *Betts II*, the contemnor may secure his release by demonstrating he is unable to comply with the order. *Betts II*, 200 Ill. App. 3d at 56, 558 N.E.2d at 424.

## V. Conclusion

Finally, although not raised by either party, we note the absence of a judgment against Blakeney. The instant matter arises as the

result of Blakeney's failure to comply with a purported order of the court regarding the post-judgment collection proceedings. Interestingly, although the prevailing party is required, under local rule, to prepare a written order of judgment and present it to the court for signature and entry in the court record, so far as the record before us shows, no *written* order of judgment has been entered in this case, with respect to *any* litigant. Moreover, while the docket entries for September 16, 1991, reflect the entry of a judgment against Hoagland, they do not reflect the entry of a judgment against Blakeney. Although it would not cure the defect of the absence of the written judgment, had the original docket sheet remained in the record, we would know with certainty whether a judgment against Blakeney had ever been recorded in the docket entries. In the multiple revisions of the court record, and apparent *destruction* of the original docket sheets, reference to a judgment against Blakeney may have been inadvertently deleted. As previously mentioned, counsel for Blakeney conceded at oral argument that a judgment had been entered against Blakeney; however, the court record, in its current version, reflects no judgment having been entered against Blakeney and would, therefore, prevent the initiation or continuation of post-judgment proceedings against Blakeney, until such judgment is obtained.

In conclusion, the trial court erred in finding Blakeney in indirect civil contempt of court because he was not given proper notice of the charges against him. The court additionally erred as indirect civil contempt of court cannot be used to punish the alleged contemnor for past misconduct; moreover, the sanction ordered by the court did not permit Blakeney to secure his release by complying with the court order he purportedly violated. The court also erred as it refused Blakeney the opportunity to demonstrate he could not pay $600. We additionally instruct the trial court on the proper use of the *nunc pro tunc* power, and caution it against holding an individual in contempt of court based upon violation of an order of which no record exists, and against proceeding in post-judgment proceedings against an individual against whom no judgment has been entered.

Reversed.

STEIGMANN, P.J., and GREEN, J., concur.