NOTICE
Decision filed 06/22/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250414-U

NO. 5-25-0414

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JEANNE MARIE JONES, | ) | Williamson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 18-D-253 |
| | ) | |
| JEFFERY MICHAEL JONES, | ) | Honorable |
| | ) | Stephen R. Green, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Where no order was entered prohibiting husband's withdrawal of funds before he did so, the order finding husband in indirect civil contempt, the purge order, and the order requiring him to pay wife's attorney fees are reversed and vacated.

¶ 2   Petitioner Jeanne Marie Jones filed a contempt petition against respondent Jeffery Michael Jones, alleging, *inter alia*, that he violated a court order when he withdrew funds from a frozen account. The circuit court found Jeffery in indirect civil contempt and ordered him to reimburse Jeanne $139,986, plus $3,572 in attorney fees. For the following reasons, we reverse and vacate the finding of contempt, the purge order, and the order requiring Jeffery to pay Jeanne's attorney fees.

1

¶ 3                                    I. BACKGROUND

¶ 4     Only the facts pertinent to this appeal are presented herein. Four years after filing a dissolution petition, Jeanne Marie Jones and Jeffery Michael Jones entered into a marital settlement agreement (MSA) on April 28, 2022, which included a reservation regarding the division of assets and debts. On August 15, 2022, Jeanne filed a motion to "fix marital accounts." She requested that seven specific accounts be fixed, and that the parties "live only on current income." Subsequently, and relevant to this appeal, a hearing was held on September 9, 2022, concerning several matters unrelated to this appeal. Although a transcript of the proceedings was not provided, a docket entry from that date states in part:

> "All investment/retirement accounts of the parties are frozen/fixed as of 8/4/2022.
>
> Court reserves ruling on whether any investment/retirement accounts have been depleted between 8/4/22 and this date, and also reserves ruling on whether any investment/retirement accounts should be refunded/replenished, as well as the logistics of any refund/replenishment."

¶ 5     On October 18, 2022, the parties entered into an agreed supplemental MSA. This agreement included a clause stating, "The investment accounts of the part[ies] were fixed by agreement on Aug. 4, 2022 and the parties avow and aver that no further withdrawals have been made therefrom." The agreement was signed by both parties and notarized. On the same date, a final judgment of dissolution of marriage was issued, incorporating both the original and supplemental MSAs.

¶ 6     On July 20, 2023, Jeanne filed a petition for rule to show cause, presenting several claims. Among those allegations, she stated that on September 9, 2022, a docket entry indicated that all investment/retirement accounts were frozen as of August 4, 2022. She further indicated that the

2

supplemental MSA included a reference to this docket entry and that the parties declared that no additional withdrawals had been made from these accounts. The petition also alleged that the balance of Jeffery's Empower 401(k) was $592,000.59 as of March 31, 2022; however, Jeffery had refused to provide any updated statements since that date. A rule to show cause was issued on July 27, 2023, ordering Jeffery to demonstrate why he should not be held in contempt of court for his willful failure to comply with the previous MSAs and the final judgment of dissolution of marriage.

¶ 7    On December 7, 2023, Jeanne filed a supplemental petition for a rule to show cause, reaffirming that the supplemental MSA specified that the investment accounts were fixed by agreement on August 4, 2022, and that the parties had confirmed that no additional withdrawals had been made from these accounts. Jeanne asserted that a review of recently received documents revealed that Jeffery had withdrawn funds after the accounts were purportedly frozen.

¶ 8    A hearing was conducted regarding the petitions; however, the matter concerning the utilization of funds from the retirement and investment accounts was not addressed. Jeffery was found in contempt of court for unrelated allegations, while other allegations were not held against him. He was given an opportunity to purge his contempt and was ordered to pay Jeanne's attorney fees.

¶ 9    On July 17, 2024, Jeanne filed a petition for rule to show cause, which included both the petition for rule to show cause filed on July 20, 2023, and the petition for rule to show cause filed on December 7, 2023. She discussed the docket entry from September 9, 2022, which froze all investment and retirement accounts as of August 4, 2022, and reserved jurisdiction to determine whether any of these accounts had been depleted between August 4, 2022, and September 9, 2022. Jeanne noted that in the supplemental MSA, the parties had averred that no withdrawals had

3

occurred. She asserted that Jeffery violated the circuit court's orders by withdrawing funds from accounts that were frozen, requested that he be held in contempt of court, and sought an award of attorney fees and sanctions.

¶ 10    On February 13, 2025, Jeffery filed a motion to strike and dismiss Jeanne's petition for rule to show cause filed on July 17, 2024, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2024)). He contended that the petition failed to state a claim upon which relief can be granted, as the acts alleged by Jeannie occurred prior to the entry of any court order, and therefore, he could not be found in contempt. Furthermore, Jeffery maintained that he could not have willfully violated the freeze order, as he did not know it existed. He accordingly requested that the petition be dismissed with prejudice.

¶ 11    A hearing was conducted on April 4, 2025, concerning various issues, including Jeanne's petition for rule to show cause. Upon examination by Jeanne's attorney, Jeffery testified that he did not review the supplemental MSA prior to signing it and that it did not accurately reflect their discussions. He further stated that he did not review it because he believed that Jeanne's attorney was truthful, "which you were not." Regarding the Betterment retirement account, the balance on August 1 was $210,000, and by the end of the month, it was $82,000. Jeffery indicated that he paid Jeanne's attorney fees based on an agreement that he would pay attorney fees before any funds were disbursed to the parties. He clarified that this obligation was included in the final agreement and that he was ordered to make these payments. He estimated Jeanne's attorney fees at $74,000, of which he was ordered to pay half. He used funds from the disputed account since it was the only remaining account. Jeffery stated that the account was diminished by $130,000.

¶ 12    He testified that although he signed the agreement on October 10, 2022, asserting that no further withdrawals had been made, that statement was untrue because there had been no court

4

order preventing withdrawals. He further explained that since August 4, he had made withdrawals to pay Jeanne's attorney fees and other legal expenses, in accordance with their verbal agreement and the final divorce decree. He testified that there was an agreement that attorney fees would be paid before the parties' assets were divided. He specified that the withdrawals included $19,260 on August 8, $34,000 on August 5, and $74,000 on August 8, all designated for legal fees for both himself and Jeanne. Any remaining funds were used to pay for his daughter's school expenses.

¶ 13    Upon examination by his attorney, Jeffery testified that the original MSA signed by the parties on April 26, 2022, stipulated that all attorney fees shall be paid prior to the distribution of marital assets. He further stated that nothing in the supplemental agreement contradicted this stipulation and affirmed that this was the understanding reached both verbally and in writing.

¶ 14    The circuit court issued a written ruling on April 23, 2025. The circuit court explained its findings:

> "The parties entered into a Marital Settlement and it was filed April 28, 2022. Respondent relies upon that document as his defense for the alleged violation complained about in the Petition. The relevant portion of it is Article III (f). It provides that 'The parties agree all attorney's fees herein shall be paid before distribution of marital funds.' In the view of the Court, that language does not in anyway modify Judge Gill's Orders that also were indicated to be agreed to by the parties. The Court is aware that the parties were not present but the attorneys indicated to Judge Gill what the agreement was the day of her docket entries. Respondent does not argue he was not aware of the Agreement as a defense to the Petition. Even if he did, attorneys bind their clients when entering into agreements pertaining to litigation when the agreements are within the scope of their authority. *Holmgren v. Newcom*, 272 N.E.2d 820, 133 Ill. App. 2d 76 (Ill. App. 1971). Judge Gill's

5

9-9-22 docket entry states in relevant part, 'All investment/retirement accounts of the parties are frozen/fixed as of 8-4-2022.' Merriam-Webster defines frozen as not available for present use. Fixed is defined as not subject to change. It is clear that the balance as of 8-4-22 was not to change as to the investment/retirement accounts."

¶ 15    The circuit court observed that Jeffery withdrew funds from a frozen account prior to the date on which the docket entry was made. The circuit court found that this withdrawal constituted "a breach of the agreed Order to freeze the account." It further noted that the MSA dated April 28, 2022, did not afford Jeffery a defense, as he was not authorized to decide which assets would be used to pay attorney fees. The circuit court emphasized that Jeffery failed to provide any explanation for using the account to cover the attorney fees, and his actions violated the circuit court's orders. Consequently, the circuit court held Jeffery in contempt and ordered him to reimburse $139,986, the amount removed from the account. Additionally, the circuit court scheduled a sanction hearing at a later date to assess the necessity of attorney fees and ordered the filing of an affidavit of attorney fees.

¶ 16    Jeffery filed a notice of appeal on May 14, 2025, but the appeal was held in abeyance pending the conclusion of the sanctions issue. On September 11, 2025, the circuit court entered the following docket entry, in part that read:

"CT IS CONTACTED BY PHONE BY BOTH ATTYS. EACH SIDE AGREES FOR THE COURT TO SIMPLY RULE AS TO SANCTIONS. THE REPORTED ATTY FEES INCURRED BY THE PETITIONER IS $3572 AS SHOWN BY THE 5-5-25 AFFIDAVIT FILED HEREIN. THE COURT AWARDS THE INCURRED ATTORNEY FEES AS IT'S [*sic*] SANCTION."

The matter was taken out of abeyance and Jeffery timely filed an amended notice of appeal.

6

¶ 18    On appeal, Jeffery first contends that the circuit court erred in finding him in criminal contempt because it did not afford him the constitutional protections and procedural rights as a contemnor. He, in the alternative, argues that if he was found in indirect civil contempt, it was error because his actions were not contemptuous at the time as no order prohibited his actions.

¶ 19    In response, Jeanne asserts that the circuit court did not find Jeffery in criminal contempt, but rather found him in indirect civil contempt. She maintains that the parties had reached an agreement on August 4, 2022, to freeze the accounts and that the September 9, 2022, docket entry reflects that agreement. She contends that Jeffery "was on notice that funds could not be withdrawn after August and his actions in withdrawing the $139,986 from the account constituted a violation of an enforceable court-approved agreement."

¶ 20    " 'A court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings.' " *Edwards v. Pekin Memorial Hospital*, 2023 IL App (3d) 210005, ¶ 34 (quoting *People v. Warren*, 173 Ill. 2d 348, 368 (1996)). Contempt may be classified as either direct, occurring in the presence of the court, or indirect, taking place outside the court's immediate presence. *Id.* Furthermore, such contempt may be categorized as either civil or criminal. *Id.* To ascertain whether a contempt finding is classified as criminal or civil, the sanctions imposed serve as the determining factor. *Id.* ¶ 35. Criminal sanctions are "*punitive* and *retrospective* in nature; 'they punish a contemnor for past acts which he cannot now undo.' " (Emphases in original.) *Id.* ¶ 36 (quoting *In re Marriage of Betts*, 200 Ill. App. 3d 26, 46 (1990)). On the other hand, civil sanctions "seek to enforce a private party's rights by compelling the contemnor to comply with a court order for the opposing party's benefit." *Id.* "Civil sanctions are thus *coercive* and *prospective* in nature; 'they seek to coerce compliance at some point in the future.' "

(Emphases in original.) *Id.* (quoting *Betts*, 200 Ill. App. 3d at 46). "[A] valid civil contempt order must contain a purge condition requiring compliance with the previously disregarded court order." *Id.* As to the conduct itself, "criminal contempt generally arises from a prohibited act, particularly one that cannot be undone, civil contempt arises from the omission of a mandated act, one that can yet be compelled." *Id.* ¶ 38. "Generally, a contempt finding is reviewed for an abuse of discretion. [Citation.] The circuit court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable." *Id.* ¶ 33.

¶ 21 We first address Jeffery's contention that he was found in indirect criminal, rather than indirect civil, contempt of court. We conclude that this assertion is unfounded. The sanction imposed by the circuit court was neither punitive nor retrospective, as it did not punish Jeffery for acts he could not undo. Rather, the contempt order was prospective and coercive, requiring Jeffery to repay the amount he had withdrawn. Furthermore, he was given the ability to purge the contempt by redepositing the funds he withdrew or reimbursing Jeanne in that amount. Based on the nature of the sanction imposed, we determine that Jeffery was found in indirect civil, rather than indirect criminal, contempt of court.

¶ 22 We next examine whether an order existed that could serve as the basis for a finding of indirect civil contempt against Jeffery. The relevant timeframe occurred in 2022. On April 28, 2022, the parties executed an MSA. Pursuant to article III, paragraph F of the MSA, it was stipulated that "[t]he parties agree all attorney's fees herein shall be paid before distribution of marital funds." The parties appeared before the court on August 4, 2022. Although no transcript of these proceedings has been submitted for our review, the docket entry for that date indicates the presence of the parties and their attorneys, and notes that negotiations were attempted. Eleven days thereafter, Jeanne filed a motion seeking to freeze seven accounts. Subsequently, on September 9,

8

2022, the attorneys appeared in court again. Once more, despite the absence of a transcript for review, a segment of the docket entry for that date states, "all investment/retirement accounts of the parties are frozen/fixed as of 8/4/2022."

¶ 23    The circuit court determined that the docket entry of September 9, 2022, was an order, and that Jeffery violated this order. The docket entry from September 9, 2022, indicated that the retirement and investment accounts were frozen as of August 4, 2022. However, despite the parties being present in court on August 4, 2022, the docket entry from that date does not mention any freezing or fixing of the investment accounts. This is particularly relevant because within days of August 4, 2022, Jeffery executed three withdrawals from his retirement account to cover attorney fees and the educational expenses of his child. Specifically, he withdrew $19,260 on August 8, $34,000 on August 5, and $74,000 on August 8. We conclude that at the time of these withdrawals, there was no court order prohibiting him from doing so.

¶ 24    First, we have not been provided with any report of proceedings concerning the court appearance on August 4, 2022. Consequently, there is nothing in the record to support Jeanne's contention that the parties recited the terms of an agreement in open court regarding the freezing of the accounts as of that date. Second, there is no written order or docket entry for August 4, 2022, indicating that the retirement and investment accounts were ordered frozen. Therefore, as of August 4, 2022, there was no court order restraining Jeffery from withdrawing funds from his retirement or investment accounts. " 'To support a finding of contempt, the order must be "so specific and clear as to be susceptible of only one interpretation." [Citation.] "It must not only be capable of reasonable interpretation, but that interpretation must be to the exclusion of other reasonable interpretations; it must be unambiguous." ' " *In re Marriage of Baumgartner*, 2014 IL App (1st) 120552, ¶ 64 (quoting *In re Marriage of Steinberg*, 302 Ill. App. 3d 845, 853 (1998),

9

quoting *O'Leary v. Allphin*, 64 Ill. 2d 500, 514 (1976), and *O'Grady v. Cook County Sheriff's Merit Board*, 204 Ill. App. 3d 258, 262 (1990)). Third, the motion requesting that the accounts be fixed or frozen was not even filed until August 15, 2022, 11 days after Jeanne asserts that the accounts were to have been frozen. If the order had been in effect as of August 4, 2022, as Jeanne contends, there would have been no necessity to submit the motion on August 15, 2022. Essentially, no unambiguous order is present in this matter, let alone an order that Jeffery could have arguably violated concerning his withdrawal of funds.

¶ 25    Jeanne states in her brief that "the parties reached an agreement that all investment/retirement accounts were frozen as of August 4, 2022," but cites to nothing in the record to reflect the agreement other than the September 9, 2022, docket entry. " '[T]he burden falls on the petitioner in a rule to show cause to establish, by a preponderance of the evidence, that the alleged contemnor violated a court order and, therefore, should be held in contempt.' " *People v. Weinstein*, 2024 IL App (2d) 230062, ¶ 108 (quoting *In re J.S.*, 2022 IL App (1st) 220083, ¶ 72). Since we were not provided with a transcript of the proceedings held on August 4, 2022, our review is restricted to the examination of docket entries and written orders. See *In re Marriage of Melton*, 93 Ill. App. 3d 338 (1981) (appellate court was not provided with a transcript of the hearing or a bystander's report and review was limited to the docket entry). As previously discussed, no docket entry or written order was entered on August 4, 2022, which prevented Jeffery from withdrawing funds from the retirement or investment accounts at the time he did so.

¶ 26    Jeanne further relies on the September 9, 2022, docket entry as the order that prohibited Jeffery's conduct at issue. However, this docket entry was entered a month after Jeffery had withdrawn the funds. Jeffery could not be found to have willfully violated an order entered after his alleged contemptuous conduct. "A trial court has authority to enter a *nunc pro tunc* order to

10

conform a written record of the judgment to the judgment in fact rendered by the court." *In re Marriage of La Reno*, 113 Ill. App. 3d 755, 759 (1983). However, "[t]he correction must be based on some note, memorandum, or memorial paper remaining in the file or upon the records of the court; it cannot be based on the recollection of the trial judge or other persons. Moreover, this power is limited to entering into the record something which was actually done; the alleged error sought to be corrected must be clerical and not judicial." *Id.* No evidence has been presented regarding any note, memorandum, or document in the file concerning the freezing of the investment and retirement accounts on August 4, 2022. Consequently, the docket entry dated September 9, 2022, did not function as a *nunc pro tunc* order and, accordingly, did not establish a retroactive order prohibiting the withdrawal of funds.

¶ 27 Finally, Jeanne references the supplemental MSA entered into on October 18, 2022, in which a paragraph states, "The investment accounts of the part[ies] were fixed by agreement on Aug. 4, 2022 and the parties avow and aver that no further withdrawals have been made therefrom." We do not perceive how the entry of the supplemental MSA following Jeffery's withdrawal of the funds constitutes an order subjecting him to indirect civil contempt of court. At most, it indicates that Jeffery was dishonest regarding the status of the funds at issue. Finally, his avowal and averment that the funds were not withdrawn do not constitute a court order, but rather an attestation by Jeffery.

¶ 28 We note, as an aside, that during oral argument, Jeanne's counsel acknowledged her potential alternative recourse against Jeffery for the withdrawn funds, including the possibility of initiating a fraud or forfeiture action against Jeffery. While we take no position on the viability of such an alternative recourse, nothing in this order prohibits Jeanne from taking further legal action to recover the funds at issue.

11

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons, we find that no order existed prohibiting Jeffery's conduct in withdrawing funds from his retirement accounts before he did so and therefore the circuit court erred in finding him in indirect civil contempt. We therefore reverse and vacate the circuit court's April 23, 2025, order finding Jeffery in indirect civil contempt and purge order and the subsequent September 11, 2025, order for payment of Jeanne's attorney fees.

¶ 31    Reversed and vacated.